The Huntington National Bank, Trustee of Janet and Jean Runkle, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 53535. Promulgated April 5, 1935.

*James I. Boulger, Esq.*, for the petitioner.
*Philip M. Clark, Esq.*, for the respondent.

## OPINION.

SEAWELL: The deficiency in controversy in this proceeding relates to income tax for 1927 in the amount of $18,397. The facts as stipulated are incorporated herein by reference as our findings of fact.

On August 15, 1924, Joseph H. Frantz executed an instrument transferring to the petitioner, in trust, 2,000 shares of common stock of the American Rolling Mill Co., the principal of 1,000 shares of which to be for the "sole use and benefit" of each of his granddaughters, Janet and Jean Runkle, then 7 and 5 years old, respectively, and all cash dividends or their equivalent on the whole to be paid to his daughter, Gretchen Janet Runkle, mother of Janet and Jean Runkle, without restrictions during the life of the trust. Provision is made in the instrument for the payment of dividends paid on the stock to another in case of the daughter's death; investment of stock dividends; reinvestment of the corpus in securities of the United States; and distribution of the corpus to persons other than the grandchildren in case of their death before becoming 30 years of age.

The petitioner was on the cash receipts and disbursements basis and maintained only one account for the trust estate.

The petitioner filed a fiduciary return of income for 1927 showing profit of $48,790 from the sale of stock, dividends of $4,000, and a deduction of $120 for compensation to the trustee. It reported that each grandchild, Gretchen J. Runkle, guardian, was entitled to one half of the dividends, less the deduction taken, and that the stock profit had been added to the principal of trusts for the grandchildren, one half to each. It also filed an income tax return for each grandchild showing taxable profit of $24,395 realized from the sale of stock not in controversy here. In his computation of the deficiency the respondent held that the trust indenture created a single trust. This action the petitioner alleges as error, claiming that the instrument created two separate and distinct trusts, one for each grandchild.

More than one trust may be established by the same instrument. Whether more than one was intended here depends upon a construction of the instrument itself, there being no other evidence of intention. Examination of all of its provisions discloses that the settlor used the singular number twenty times in referring to the trusteed property. For instance, in the habendum clause the trustee is empowered to execute, with the approval of Gretchen J. Runkle, such instruments as are deemed necessary "in administering this trust", subject, however, to "the provisions herein made with reference to said trust." Clause 3 (a) provides that "During the

life of this trust " cash dividends are to be paid to Gretchen J.
Runkle, with the sole right to use the funds without accounting to
anyone " during or after the continuance of this trust." Clause 4
directs that income from investments in Federal securities be invested
in like securities and be " added to the principal of this trust."
Another clause makes provision for the retention of the " principal
of the trust " for the benefit of the surviving grandchild in case of
the death of one before arriving at the age of thirty years. In case
of the death of both before attaining that age, the " whole of the
principal of said trust " and accumulations is to go to the settlor's
daughter.

Without any discussion of the purport of these terms pointing
directly to intent to create a single trust, on brief counsel for the
petitioner calls our attention to several provisions of the indenture,
which he says clearly demonstrate the creation of two trusts. These
provisions read as follows:

1st: One thousand (1,000) shares of said stock to be held by said THE
HUNTINGTON NATIONAL BANK, of Columbus, the principal of which shall be for
the sole use and benefit of my granddaughter, Janet Runkle, now aged seven
years;

2nd: One thousand (1,000) shares of said stock to be held by said THE
HUNTINGTON NATIONAL BANK, of Columbus, the principal of which shall be for
the sole use and benefit of my granddaughter, Jean Runkle, now aged five
years;

4th: All stock dividends which may be declared upon said two thousand
(2,000) shares of stock as and when they may be declared and paid, shall
be divided equally and added to the principal of the trust herein provided for
my said granddaughters, Janet and Jean Runkle, and the certificates therefor
delivered to said Trustee, THE HUNTINGTON NATIONAL BANK, of Columbus, and,
upon approval of said Gretchen Janet Runkle, or her successor in interest,
within a reasonable time, with due regard to market conditions, to be sold,
and the proceeds of such sale or sales to be invested by said Trustee, THE
HUNTINGTON NATIONAL BANK, of Columbus, in securities of the Federal Gov-
ernment of the United States, and in case of the maturity of any such secu-
rities, the proceeds thereof are to be re-invested in other similar securities,
said investments to be made after advice and with approval of said Gretchen
Janet Runkle or her successor in interest.

The income from said investments in Federal Government securities shall
be re-invested in Federal Government securities, and be added to the princi-
pal of this trust.

5th: * * *

In case of the marriage and death of either or both of my said grand-
daughters, Janet Runkle and Jean Runkle, before arriving at the age of thirty
(30) years, and leaving lawful issue, the trust fund herein provided for such
granddaughter, or granddaughters, and subject to all of the conditions herein,
is, by my said Trustee, THE HUNTINGTON NATIONAL BANK, of Columbus, to
be held for the benefit of the issue of said deceased granddaughter or grand-
daughters, share and share alike, in the interest of the mother of said issue,
and the Trustee herein, THE HUNTINGTON NATIONAL BANK, of Columbus, is
to continue as Trustee, managing and administering the funds in accordance

with the provisions of this trust, until such child or children of such deceased granddaughter or granddaughters become of age.

$$* \qquad * \qquad * \qquad * \qquad * \qquad * \qquad *$$

This trust is to continue until each of my said granddaughters, Janet Runkle and Jean Runkle, respectively, shall arrive at the age of thirty (30) years, upon which event, in each case, and as soon as practicable thereafter, the trust fund with all accrued interest and accumulations herein provided for each of my said granddaughters shall be paid over by my said Trustee, THE HUNTINGTON NATIONAL BANK, of Columbus, or its successors, to my said granddaughters Janet Runkle and Jean Runkle, as and when each of said granddaughters becomes of that age, respectively.

In the construction of a trust instrument to arrive at the intent of the settlor all of the provisions of the document must be considered, not a few isolated provisions. *Fidelity & Columbia Trust Co.* v. *Lucas*, 66 Fed. (2d) 116. Clause 4 is clearly ambiguous to the extent that it provides for an equal division of stock dividends for addition to "the principal of the trust." There is language in the quoted provisions of the fifth clause of the instrument indicating an intent to create a separate trust for each grandchild. When read, however, in connection with other directions of the settlor, it becomes apparent that no such intention was meant. Another provision appearing in the fifth clause is that in case of the death of either grandchild, without lawful issue, before attaining the age of thirty, the "principal of the trust herein provided for my granddaughters" is to be retained by the trustee for the benefit of the survivor or her issue. The same clause directs that in the event of the death of both grandchildren before reaching thirty years of age and without lawful issue, the "whole of the principal of said trust" shall be at once paid to the settlor's daughter, and in case of the death of all three without issue, the "principal of said trust" is to go to six designated persons in equal proportions.

There is nothing in the instrument expressly declaring an intent to create two trusts or that in case either grandchild died before reaching the age of 30 years the trust set up for her should terminate and the corpus thereof be transferred to the survivor. Terms such as "trusts" and "these trusts", commonly appearing in an instrument creating more than one trust, are absent in the document. The word "funds" appears only twice in the instrument. In one instance it is used with reference to administration of corpus and in the other it is employed in prescribing the manner of raising money to pay taxes in case earnings of the trust estate are insufficient to meet such expenses.

As we construe the instrument, the settlor intended to create one trust in which each grandchild was to have an equal beneficial interest in the corpus. *Commissioner* v. *United States Trust Co. of New York*, 75 Fed. (2d) 973. It follows that the respondent did not

err in determining the deficiency on the basis of a single trust. Cf. *Johnson* v. *United States*, 65 Ct. Cls. 285; *State Savings Loan & Trust Co., Trustee*, 25 B. T. A. 228; affd., 63 Fed. (2d) 482; *John J. Rauels et al., Trustees*, 28 B. T. A. 516; *Gertrude McGinley, Trustee*, 31 B. T. A. 81.

On December 28, 1927, at the request of the petitioner, Otis & Co., brokers, sold through its New York office for delivery the same day, 1,000 shares, consisting of blocks of 700, 200, and 100, of stock of the American Rolling Mill Co. On the same day the New York office of Otis & Co. delivered to brokers for the purchaser 1,000 shares of the stock, and as of that date the account of the petitioner with Otis & Co. was credited with $104,790 on account of the sale. On December 29, 1927, the Columbus, Ohio, office of Otis & Co. received from the petitioner, and forwarded to its Cincinnati, Ohio, office for transfer to Otis & Co., New York, New York, 1,000 shares of American Rolling Mill Co. stock. On the following day (1) the certificates were received by the Cincinnati office of Otis & Co. and delivered to the transfer office of the American Rolling Mill Co.; (2) the certificates were canceled and new ones issued in the name of Otis & Co., New York, New York; and (3) notice of the transfer was mailed to the Columbus office of Otis & Co. The Columbus office of Otis & Co. closed at noon December 31, 1927. January 1, 1928, fell on a Sunday and January 2, 1928, was a legal holiday. On January 3, 1928, the Columbus office of Otis & Co. received notice of the transfer and issued and delivered to the petitioner a check for $104,790 in payment for the stock. The petitioner recorded the payment on its books as of January 3, 1928.

The petitioner reported the profit on the sale as income taxable in 1928. The respondent included the profit in petitioner's 1927 income. Whether the gain is taxable in 1927 or in 1928 is the only question presented for decision.

The stock which the petitioner directed its broker to sell was owned by the seller at the time and the transaction was an ordinary sale of stock, not, as the petitioner contends, a " short sale." *Provost* v. *United States*, 269 U. S. 443; *Robert W. Bingham*, 27 B. T. A. 186; *James Cunningham*, 29 B. T. A. 717. Had the broker treated the transaction as a short sale, it would have charged the petitioner with the price of the stock delivered instead of crediting the petitioner with the selling price of the securities. *Brown* v. *Carpenter*, 182 N. Y. 650; 169 N. Y. S. 921. That Otis & Co., for reasons not disclosed by the stipulation, saw fit to deliver to the broker for the buyer on the day of the sale certificates other than those held by the petitioner is not regarded as material.

The buyer of the stock was not Otis & Co., but the customer of the broker with whom Otis & Co. dealt in New York. With respect to

the sale of the shares of stock owned by the petitioner, Otis & Co. was acting as the agent of the seller. *Brown* v. *Carpenter, supra; James Cunningham, supra; William W. Miller,* 31 B. T. A. 192. There is no suggestion in the agreed facts or briefs that the amount credited to the account of petitioner on the date of sale was not actually received by the broker in 1927. Neither is there anything in the stipulation contrary to the fact that the selling price was unqualifiedly subject to the demands of the petitioner certainly on and after December 29, 1927, when it delivered the stock certificates, presumably properly endorsed, to the Columbus office of the broker, where the selling order was placed. Title to the stock then passed and nothing remained for the petitioner to do to fully consummate the transaction except demand the selling price received by the broker for the stock. Under the circumstances, receipt by the agent was receipt by the principal, and the profit realized on the sale became taxable income to the petitioner at that time. *Frank E. Best,* 26 B. T. A. 1070, and *Fremont C. Peck et al., Executors,* 31 B. T. A. 87, and cases cited therein.

But the petitioner argues that the broker was not satisfied to accept the sale as a closed transaction until the stock certificates had been reissued in favor of " Otis & Company, New York, New York." There is nothing in the agreed facts that payment of the selling price of the stock by the broker was to await the reissuance of the stock in favor of Otis & Co., New York, New York. Granting for purposes of discussion that delivery of the consideration received for the stock was conditional upon such action, it was complied with on December 30, 1927, when the stock certificates were so reissued and delivered to the broker at its Cincinnati office, delivery to that office being equivalent to delivery to the Columbus office of the broker.

*Avery* v. *Commissioner,* 292 U. S. 210, involved distinguishable facts, and is not regarded as controlling the question here.

The respondent committed no error in including the profit realized in the sale of the stock in petitioner's income for 1927.

The petition raised an additional question involving the basis for the stock. On brief the petitioner concedes that the respondent was correct in using as a basis cost of $30 per share.

Reviewed by the Board.

*Decision will be entered for the respondent.*

---

BLACK, dissenting: I dissent from the majority opinion on the second point. The facts clearly show that petitioner did not actually receive the check for the stocks which it had sold on December 28, 1927, until January 3, 1928. There appears to have been no unusual

postponement in the mailing of this check by the brokers to petitioner. It appears to have been done in the regular course of business and on account of the particular facts stated in the majority opinion, the check did not reach petitioner until January 3, 1928. It appears from the facts stated in the majority opinion that it was not until January 3, 1928, that petitioner became unqualifiedly entitled to receive the money. The majority opinion states in substance as follows: On January 3, 1928, the Columbus office of Otis & Co. received notice of the transfer of the stock to Otis & Co. and issued and delivered to the petitioner a check for $104,790 in payment for the stock.

While it is true that Otis & Co. acted as agent for petitioner in the sale of the stock, and, as a general rule, income when paid to an agent is income to the principal, there are exceptions to this doctrine of constructive receipt by the principal. Generally, a receipt will not be taxed to the principal when it comes to the agent unless the agent is acting exclusively for the taxpayer and the fund is in the hands of the agent, unqualifiedly subject to the demand of the taxpayer principal. *Sydney F. Tyler et al., Trustees*, 28 B. T. A. 367.

It seems clear that in the instant case Otis & Co., petitioner's agent in the sale of the stock in question, was not willing to turn over the money which it had received from the sale until its Columbus office had received notice that petitioner had duly transferred the 1,000 shares of stock in question to Otis & Co. This information was received at Otis & Co.'s Columbus office on January 3, 1928, and thereupon Otis & Co. promptly issued its check to petitioner. Thereupon the $104,790 became unqualifiedly subject to petitioner's disposal.

Section 42 of the Revenue Act of 1928, reads: " The amount of all items of gross income shall be included in the gross income for the taxable year in which *received* by the taxpayer, unless under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period." (Italics supplied.) Section 213 (a) of the Revenue Act of 1926, referred to by the Supreme Court in *Avery* v. *Commissioner*, 292 U. S. 210, contains the same language.

The majority opinion finds " the petitioner was on the cash receipts and disbursements basis." For reasons I have already stated, it seems to me that in the instant case there is no occasion to apply the doctrine of constructive receipt and that the $104,790 in question should be taken into petitioner's gross income in the year 1928. Cf. *Avery* v. *Commissioner, supra.*