HALE, Former Collector of Internal Revenue, v. DOMINION NAT. BANK et al.

HENSLEE, Collector of Internal Revenue v. DOMINION NAT. BANK et al.

Nos. 11129, 11130.

United States Court of Appeals
Sixth Circuit.

Jan. 18, 1951.

Robert M. Weston, Washington, D. C., (Theron Lamar Caudle, Ellis N. Slack, Robert N. Anderson, and Louise Foster, all of Washington, D. C., Ward Hudgins, U. S. Atty., Nashville, Tenn., on the brief), for appellants.

Robert Ash, Washington, D. C. (Robert Ash and John W. Cragun, Washington, D. C., on the brief; S. Bruce Jones, Wm. H. Woodward, and Waldo G. Miles, all of Bristol, Va., of counsel), for appellees.

Before HICKS, Chief Judge, and SIMONS and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The appeals involve income taxes for the years 1941, 1942 and 1943. They present a problem involving the interpretation of a trust instrument executed by Ina J. Massengill in 1941, and the controversy is in respect to whether the trustor, by her grant, created multiple trusts for the beneficiaries. The appellees are the trustees and paid the tax for the tax years, computed upon the income of the trust res as a single trust. Subsequently they made timely claims for refund upon the ground that multiple trusts were created by the grantor, and their claims being denied brought suit against the Collector and the successor Collector. The court gave judgment for the trustees and the Collectors appeal.

The facts are stipulated and but a single legal issue is involved in the controversy. Mrs. Massengill, by the trust instrument, transferred to the trustees an undivided one-half interest in certain chemical formulae owned by her and in use by the S. E. Massengill Company under a royalty agreement. The trustees were to own, hold, manage and lease the formulae for the equal benefit of the grantor's four grandchildren until December 31, 1960, at which time the trust terminates. The terms of

the instrument referring to the trust are all in the singular and there is no dispute that as originally created the trust was single for multiple beneficiaries. The court so held and the appellees do not now disagree.

The contention, however, is that by reason of § 2 of the trust indenture, it was provided that there should come into being four additional trusts, each with its own corpus, each independent and distinct from the other three, and to this contention we must address ourselves for the court accepted such interpretation.

Section 2 of the trust deed, in so far as it is material, reads: "All income received from the properties shall, upon receipt, be divided into equal parts, one for each of the grandchildren, and placed to the separate credit of each such grandchild. The income so received and credited to each above named grandchild shall be invested and reinvested by the Trustees and all accruals to each share, less necessary and proper charges, shall be held by the Trustees and allowed to accumulate in each grandchild's account until such grandchild shall have attained the age of 21 years. When such age is attained by any above named grandchild, such grandchild shall be entitled to receive, and the Trustees shall pay in quarterly payments, all income from the investments made by funds so coming in and held on behalf of such grandchild and shall continue such payments of income from such investments to such grandchild until he or she reaches the age of 30 years. When such grandchild reaches the age of 30 years he or she shall be entitled to receive and the Trustees shall pay to such grandchild (in addition to the income from investments) such grandchild's proportionate part of the income from the formulae as may come in after such 30th birthday, the Trustees at the same time retaining control and title to the invested corpus of such grandchild and to the formulae. On December 31, 1960 this trust shall automatically terminate and the Trustees shall pay or transfer and deliver to each of the grandchildren then living all the corpus investments held by them to the credit of each such grandchild and shall also transfer to such grandchild his or her undivided fractional part of all the formulae herein conveyed; * * *"

Whether a trust instrument creates one or more trusts depends upon the intention of the donor as it may be derived from its terms. U. S. Trust Co. v. Commissioner, 296 U.S. 481, 56 S.Ct. 329, 80 L. Ed. 340; Huntington National Bank v. Commissioner, 6 Cir., 90 F.2d 876, 877; State Savings Loan & Trust Co. v. Commissioner, 7 Cir., 63 F.2d 482. Even though all references to the trust are in the singular, and terminology is not conclusive, yet in the face of such designation frequently repeated, indication of a contrary intention should be clear. If § 2 were the only section throwing light upon the grantor's intention, it might be persuasive of the soundness of the district court's conclusion that it was the purpose of the grantor to create multiple trusts. The section does not, however, stand alone and it is fundamental that in ascertaining the meaning of an instrument we must consider it as a whole. Section 3 provides: "If during the continuance of this trust any grandchild above named should die without issue surviving, such grandchild's part shall go equally to the other above named grandchildren living at such grandchild's death." It also provides: "In the event of the death of all the above named grandchildren during the continuance of this trust without issue surviving any of them, then upon the death of the last one the entire corpus shall go one-half to Pauline M. DeFriece and one-half to John T. Massengill or their heirs or legatees by representation." Neither of these last named persons is an original beneficiary of the trust. Section 4 provides: "The only circumstance under which the Trustee shall have the power to pay to any of the beneficiaries any sum out of the invested corpus of the estate shall be when the Trustees in their sole discretion are of the opinion that an emergency exists which requires the use of such funds for the protection of the health of one of the beneficiaries hereunder, and such beneficiary is unable to provide funds therefor; but such withdrawals from the invested corpus shall in no event exceed $5,000.00, and in no event shall any part of

the formulae hereby conveyed be disposed of to provide such funds."

The contention of the appellees is that under § 2, four new trusts were provided for, which came into being as soon as royalties were received from the use of the formulae constituting the original corpus of the trust, and were divided by credits to the individual beneficiaries; that the beneficiaries by such credits acquired a vested interest in such funds and that these separate subsequent trusts became the beneficiaries of the original trust. It must be noted, however, that the credits to each of the beneficiaries were not absolute but contingent; that under § 3 no beneficiary could receive any part of either the original corpus or its income if he should die without issue surviving, and that if all of the beneficiaries should die before the trust terminated the entire corpus would go to persons other than the original beneficiaries of the trust; that by § 4 no beneficiary would receive any part of the invested corpus of the estate except in the case of an emergency and then only out of the invested corpus, and in no event out of the formulae which constituted the original res.

U. S. Trust Co. v. Commissioner, supra, does not solve our problem. There a single trust was created by the original indenture but provision was made therein for the alteration of the trust in any respect and to any extent at any time by the three beneficiaries or their survivors subject to the approval of the grantor, if living, and thereafter the rights and powers of all parties concerned were to be the same as though the trust deed had originally been executed in the altered form. Changes were made by successive amendments which expressly converted the single trust into three trusts, the court holding that the evidence and findings left no doubt as to the intention so to do. In the case at bar the determination of the grantor's intention must be gathered solely from the terms of the grant. Nor does our decision in Mac-Manus v. Commissioner, 6 Cir., 131 F.2d 670, decide the present controversy. There six separate and independent trusts were originally set up, each trust committed to the same trustee. The grantor being dissat-

isfied with the handling of the estate by the trustee desired to reconstitute the trusts so as to rehabilitate the assets. Two of the trusts having been terminated by distribution he transferred the corpus of four trusts for the benefit of four remaining beneficiaries to his oldest son as trustee, who executed a declaration of trust which, because of ambiguities found therein by the Tax Court, required interpretation since it referred variously to the trusts both in the singular and in the plural. This interpretation required consideration of a contemporaneous letter by the grantor to his son, wherein there was express reference to four trusts and a definite understanding that the four trusts were to remain intact. We have here no contemporaneous or subsequent illumination of the grantor's intention, and again are relegated to the terms of the instrument.

We said in Huntington National Bank v. Commissioner, supra, that where references to a trust are in the singular, that in the face of such designation frequently repeated, indications of a contrary intention should be clear even though terminology is not conclusive. In Johnson v. United States, 65 Ct.Cl. 285, certiorari denied, 278 U.S. 611, 49 S.Ct. 17, 73 L.Ed. 536, where the trustees were to divide the trust fund into three equal parts and directed to add accrued income to each part equally, it was held that the grantor had intended to create but a single trust.

■ So notwithstanding the provisions of § 2, it seems to us that the unbroken references in the trust instrument to a single trust, the subjection of the individual credits of beneficiaries to the contingencies recited in § 3 and subordinated to the power of the trustee to provide for emergencies out of invested corpus, all point to the intention of the grantor to create but a single trust. This is particularly so when we analyze § 4. There the trustees are given the power to pay to a beneficiary $5,000 in an emergency, out of the *invested corpus* of the estate, with the distinct proviso that in no event shall any part of the formulae be disposed of to provide such funds. It must be observed that the original res consisted solely of property which could neither be

sold nor divided until the termination of the trust. The funds derived from royalties and credited pro-rata to the beneficiaries constituted the only available funds of the trust, and this is referred to in the instrument not as property of the beneficiaries but as the invested corpus of the estate. The grantor conceived the trust res to consist of both the formulae and the invested royalties with their accretions, a concept which we may not here disregard. And to make sure that emergencies would be taken care of out of investments of royalties, he provided that in no event should any part of the formulae be disposed of. This leads to the view that § 3 is merely a direction to the trustees as to the manner of keeping the accounts of the trust and not indicative of an intention to create multiple trusts. Our reasoning is consonant with that in Huntington National Bank case, supra.

The decree is reversed with direction to dismiss.