Tom R. Booth Trust, First City National Bank of Houston, Trustee, Deed of Trust dated October 18, 1945, as amended v. Commissioner.
Booth Trust v. Commissioner
Docket No. 84580.
United States Tax Court
T.C. Memo 1963-265; 1963 Tax Ct. Memo LEXIS 78; 22 T.C.M. (CCH) 1337; T.C.M. (RIA) 63265; 20 Oil & Gas Rep. 1063; September 27, 1963
*78 A trust instrument conveying oil and gas royalties and grantor's reversionary interest to a trustee for the benefit of grantor and his four children, created a single trust, not five separate trusts. Incorporation by reference of provisions of The Texas Trust Act into the trust instrument entitled the trustee to allocate all allowable depletion deductions to the trust and none to the beneficiaries. Robert K. Jewett, Esperson Bldg., Houston, Tex., and Sam G. Croom, Jr., for the petitioner. Jackson L. Bailey, for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: Respondent determined deficiencies in petitioner's income taxes for the years and in the amounts as follows: 1951
$98,795.42
1952
93,046.05
1953
83,930.89
The issues for decision are: (1) Whether *79 one or multiple trusts were created by a trust instrument; and (2) the proper allocation of depletion allowances. Findings of Fact Petitioner is the Tom R. Booth Trust, First City National Bank of Houston, Trustee, Deed of Trust dated October 18, 1945, as amended. The trustee is a national banking association, having and exercising trust powers, with its place of business at 1001 Main Street, Houston, Texas. Through a 1957 merger it is the successor of the original trustee, State National Bank in Houston, Texas. On October 18, 1945, Tom R. Booth was divorced by his wife, Agnes Booth. At the time of their divorce, the parties had four minor children, Thomas Walter, Freeman Irby, James Russell and Helen Ann. In connection with the divorce proceedings, Tom R. Booth executed a deed in trust dated October 18, 1945, conveying to the trustee for the benefit of himself and each of his four children, his interests in specified mineral interests and possibility of reverter. The deed in trust provided that the properties conveyed should constitute and be referred to as "the TRUST ESTATE," and all monies coming into the trustee's hands should constitute and be referred to as "the TRUST *80 FUND." The deed in trust was stated to be irrevocable and "Upon the Termination of this Trust the right to the possession of the entire TRUST FUND and TRUST ESTATE shall vest in and such possession shall ipso facto pass to the GRANTEES * * * in equal proportions * * *." Article IV, paragraph 3, provided for the general powers of the trustee as follows: THE TRUSTEE, and the successors in Trust of TRUSTEE, shall have the control of the TRUST ESTATE and the TRUST FUND, and the TRUSTEE and such successors shall have and exercise all the rights, power and authority, and shall be subject to the same duties, responsibility and obligation as are granted and imposed by Title 125-A of the Revised Civil Statutes of Texas, except insofar as the same are qualified or denied by the express provisions of this instrument. The trustee was to keep a full and complete system of accounts, render annual statements to the grantor and grantees, and create a reserve of one-half of the income with which to pay the taxes and insurance premiums of the beneficiaries. The balance of the trust fund income, after creation of the reserve, was to be "credited by the TRUSTEE to the separate accounts" of the *81 grantor and grantees. Grantor was to receive 5/9 and each grantee's account was to receive 1/9 of the balance. Sums in grantor's account were to be paid to him monthly, while the trustee was to "hold for the use and benefit of the minor GRANTEES such sums as have accumulated to their credit." Funds for the support and maintenance of the grantees were to be deducted from these sums. When each grantee reached the age of 21 the trustee was directed, upon the grantee's request, to pay the grantee 50 percent "of the surplus funds which have accumulated in his account." When each grantee reached the age of 25, upon the grantee's request, the trustee was to "pay and deliver to him all funds or property which have accumulated in his account, and shall assign to him his pro rata [share] of the royalty herein conveyed to the Trustee for his benefit." The deed in trust further provided that: In the event of the death of any grantee before all of his proportionate share of the estate has been delivered to him, his interest in the estate held by the Trustee shall pass to and become the property of the surviving grantees, share and share alike, and administered under the terms of this trust, *82 unless such deceased grantee shall leave a child or children, in which event it shall pass to his child or living children and be held by the Trustee and administered under the terms of this trust until the last surviving named grantee herein reaches the age of twenty-five (25) years, at which time this trust shall terminate. Subsequent to the execution of the deed in trust, actions to construe and amend parts of the deed were brought in the District Court of Fort Bend County, Texas. The decrees of that court, on October 22, 1946, and May 2, 1950, declared the validity and effectiveness of the deed in trust, and allowed alternations and enlargements of the terms thereof in respects not here material. In connection with the deed in trust, the trustee maintained six separate accounts: No. 195 Booth Master Trust, No. 195-A Tom R. Booth, and No. 195-B through E for the four named children. All oil and gas royalty proceeds received by the trustee were first credited to the Booth Master Trust account. Then the trustee's fees were deducted and the account of each beneficiary was credited with his pro rata share. Ad valorem taxes were deducted from each account at the end of each year. *83 For the years 1951, 1952 and 1953 the trustee filed fiduciary income tax returns (Form 1041) with the district director of internal revenue at Austin, Texas, for each of the five beneficiaries; treating their accounts as separate trusts, and deducting the amounts of distributions made to or on behalf of each respective beneficiary. On November 19, 1952, James Russell Booth died without attaining the age of 21. The balance of his account, No. 195-D, was credited to the accounts of the remaining three children. On August 17, 1953, Thomas Walter Booth reached the age of 25 and withdrew his share of the accumulated funds and properties, leaving it with the trustee, as his agent. On December 25, 1955, Freeman Irby Booth reached the age of 25 and left his share with the trustee, as his agent. Tom R. Booth died January 5, 1962, prior to the date of this trial. Starting in 1955, the trustee executed consents fixing period of limitation upon assessment of income and profits tax (Form 872), which extended the statute of limitations until June 30, 1960, for the taxable years 1951, 1952 and 1953, the years here in question. These consents were signed for the taxpayer in the name of the *84 bank "as Trustee under a Deed of trust executed by Tom R. Booth on Oct. 18, 1945, as amended," by the trust officer of the bank. The statutory notice of deficiency was mailed to petitioner on October 9, 1959. Therein the Commissioner's explanation of adjustment was as follows: It is determined that by instrument dated October 18, 1945, Tom R. Booth created the Tom R. Booth Trust for the benefit of himself and Thomas Walter Booth, James Russell Booth, Freeman Irby Booth, and Helen Ann Booth. It is further determined that the entire undistributed income of the Tom R. Booth Trust, after allocation of depletion between the beneficiaries and the trustee in accordance with the provisions of section 23(m) of the Internal Revenue Code of 1939, is taxable to the Tom R. Booth Trust. * * * Opinion Whether one or multiple trusts have been set up by a trust instrument depends primarily upon the intent of the settlor as it is manifested in the dispositive instrument. State Sav. Loan & Trust Co. v. Commissioner, 63 F. 2d 482 (C.A. 7, 1933), affirming 25 B.T.A. 228 (1932). We must look to the instrument as a whole in order to determine settlor's intent. Huntington National Bank, Trustee, 32 B.T.A. 342 (1935), *85 affd. 90 F. 2d 876 (C.A. 6, 1937). When all the provisions of the deed in trust are viewed as a whole it is clear that settlor created a single trust with separate accounts for each of the beneficiaries, and we so hold. It is true that a single instrument can create multiple trusts since an undivided interest in property may constitute the corpus of a trust. U.S. Trust Co. v. Commissioner, 296 U.S. 480 (1936). The beneficiaries here were given undivided interests in the trust corpus, but separate trusts were not created by the instrument. Separate accounts were opened by the trustee, but this is not the equivalent of settlor's creation of separate trusts by the trust instrument. Had the settlor desired to create separate trusts he could easily have been more explicit. See e.g. the dispositive provisions in Commissioner v. McIlvaine, 78 F. 2d 787, 788 (C.A. 7, 1935), affd. 296 U.S. 488 (1936). In Langford Inv. Co. v. Commissioner, 77 F. 2d 468 (C.A. 5, 1935), affirming 28 B.T.A. 222 (1933), where property was conveyed to the trustee "for the use and benefit of" three named beneficiaries, each to receive *86 "an undivided one-third interest," the court found one trust for income tax purposes, and said: The beneficial interest conferred on each of the three named children of the settlors was an undivided interest in all the property conveyed, not sole beneficial ownership of a separate, segregated, and identified share or portion allotted to the three children severally. * * * The same reasoning is applicable here. Petitioner stresses the importance of the construction placed upon the instrument by the trustee, who kept the proceeds and investments of each beneficiary in a separate account. While the construction placed upon an instrument by a trustee may be persuasive evidence of the grantor's intent, State Sav. Loan & Trust Co. v. Commissioner, supra; John J. Rauers et al., Trustee, 28 B.T.A. 516 (1933), the deed here controls on the issue of how many trusts were created. Indeed, it is hard to see how, if grantor had used any more explicit language to set up one single trust, the trustee could have administered each beneficiary's interest without using separate accounts. Since he was required to pay taxes, maintenance expenses, and insurance and annuity *87 premiums for each beneficiary, separate accounts were essential. The separate investments and the inability of any beneficiary to hold the trustee accountable for another's share, are not sufficient to override grantor's manifest intent. Actual segregation of the trust res into its component shares is not necessary to create separate trusts. U.S. Trust Co. v. Commissioner, supra. Conversely, the maintenance of separate accounts, or even actual segregation of assets, does not act to create separate trusts. In the deed in trust the grantor continuously refers to the trust in the singular. Nowhere is the plural employed. This is persuasive evidence of an intent to create a single trust. As we said in Lincoln Electric Co. Employees' Profit-Sharing Trust, 14 T.C. 598 (1950), reversed on other grounds 190 F. 2d 326 (C.A. 6, 1951), where the grantor consistently used the singular form in referring to the trust and the trust estate: In our opinion the trust instrument in its entirety and particularly the references to the trust in the singular and the references to the beneficiaries in the plural show a clear expression of intent of the grantor *88 to establish a single trust. * * * The use of the singular form has been held to be an important factor in determining settlor's intention, and clear proof of intent to create more than one trust is required to overcome such language. William L. Mellon Trusts, 11 T.C. 135 (1948), affd. 174 F. 2d 828 (C.A. 3, 1949); Huntington National Bank, Trustee, supra; Hale v. Dominion Nat. Bank, 186 F. 2d 374 (C.A. 6, 1951), certiorari denied 342 U.S. 821 (1951). Similarly, the multiple references to the trust in the singular were found to indicate that only one trust had been set up in Langford Inv. Co. v. Commissioner, supra, despite the ability of beneficiaries to draw upon their accumulated shares, and provisions for gifts over to the remaining beneficiaries if one should die before reaching a specified age. Since we find that there was but one trust created by the deed in trust, the petitioner - that one trust - is taxable on all undistributed income, as respondent contends. In his notice of deficiency, respondent allocates portions of the depletion deductions to the respective beneficiaries. Petitioner *89 contends that they are allowable in their entirety to the trustee. We agree with petitioner. Section 23(m) of the Internal Revenue Code of 1939 provides, in part: In the case of property held in trust the allowable deduction shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each. It is respondent's contention that there are no provisions of the trust instrument which allocate the deductions, and that therefore the last clause of section 23(m) is applicable. We disagree. Article IV, paragraph 3, of the deed in trust provides that the trustee and his successors "shall have and exercise all the rights, power and authority, and shall be subject to the same duties, responsibility and obligation as are granted and imposed by Title 125-A of the Revised Civil Statutes of Texas, except insofar as the same are qualified or denied by the express provisions of this instrument." In Article IV, paragraph 7, certain statutory powers of Title 125-A (The Texas Trust Act) are denied to the trustee. Not qualified *90 or denied in the deed, however, was Article 7425b-33, the section which apportions royalties, where their disposition is not provided for in the instrument.[1] Because the deed in trust incorporates this provision of The Texas Trust Act by reference, there is a sufficient manifestation of the grantor's intention to allocate the depletion allowances. Thus there are "pertinent provisions of the instrument" allocating the allowable deduction to the trustee, who is entitled to deduct the full amount of the depletion. See Estate of Mary Jane Little, 30 T.C. 936 (1958), reversed on other grounds 274 F. 2d 718 (C.A. 9, 1960); John R. Upton, 32 T.C. 301 (1959), affd. 283 F. 2d 716 (C.A. 9, 1960).
*91 Petitioner's contention that the assessment of any additional income taxes against it was barred by the statute of limitations is without merit. We need not decide whether the petitioner is foreclosed by his execution of the Form 872 consents, or whether the statute of limitations has never started to run because no return was ever filed in the name of the proper taxpayer. Despite the dispute as to the number of trusts created, the creating instrument was acknowledged by both parties to be the October 18, 1945, deed in trust executed by Tom R. Booth. Petitioner had full notice and was never misled by respondent's references to the "Tom R. Booth Trust." Since only one trust was created, this is an adequate description of the taxpayer, and all proceedings thus far have been validly denominated in that name. Decision will be entered under Rule 50. Footnotes
1. Where any part of the principal consists of any interest in lands, including royalties, overriding royalties, and working interest, from which may be taken timber, minerals, oil, gas or other natural resources, and the trustee or tenant is authorized by law or by the terms of the transaction by which the principal or trust was established to sell, lease, or otherwise develop such natural resources, and no provision is made for the disposition of the proceeds thereof, such proceeds, if received as delay rentals on a lease shall be deemed income, but if received as consideration, whether as bonus or consideration for the execution of the lease or as royalties, overriding or limited royalties, oil payments or other similar payments, received in connection with the physical severance of such natural resources, shall be apportioned to principal and income as follows: 27 1/2% of the gross proceeds (but not to exceed 50% of the net, after deducting the expense and carrying charges on such property) shall be treated as principal and invested or held for the use and benefit of the remainderman, and the balance shall be treated as income subject to be disbursed to the tenant or person entitled thereto. Such disposition of proceeds shall apply whether the property is producing or non-producing at the time the trust becomes effective. Acts 1943, 48th Leg., p. 232, ch. 148, § 33; Acts 1945, 49th Leg., p. 109, ch. 77, § 10.↩