MARK HEMPHILL,

*et al., etc.*

*v.*

DON AUKAMP,

*et al., etc.*

(No. 14709)

Decided March 25, 1980.

*Phillip O. North* for appellants.

*Elmer H. Dodson, Love, Wise, Robinson & Woodroe, W. M. Woodroe and John O. Kizer,* for appellees.

MILLER, JUSTICE:

In this appeal from the Circuit Court of Kanawha County we are asked to determine whether an intervivos trust agreement created a single trust or multiple trusts. The Circuit Court held the trust instrument created a single trust, and we agree.

In 1937 the settlor, Mrs. Margaret R. North, created a trust agreement with the provisions that she receive the trust income for life and that at her death, her three named sons would receive the income from the trust during their lives. It further provided that the trust was to terminate twenty years from the date of the death of the last life tenant and would then be payable to the surviving issue of the life tenants. Mrs. North reserved in the trust instrument the right "to alter or amend any term or provision thereof." She died in 1960 without making any alterations or amendments to the trust instrument.

Since 1960, the trust income has been paid in equal shares to her three sons. It appears that some disagreement has arisen between the sons as to the manner of investment of the trust corpus. In particular, one of the sons, Phillip O. North, has urged the trustee to consider dividing the trust corpus into three separate trust funds in order that the trust fund for his own family could be concentrated on growth investments.

The members of Phillip North's branch of the family are the plaintiffs in this declaratory judgment action

and take the position that the trust instrument is ambiguous in regard to whether the settlor intended to create multiple trusts. To sustain this position, they point to the fact that the plural word "trusts" is used some six times in the trust instrument. They also refer to administrative language of the trust that:

> "The Trustee may hold the trust estate or any part thereof as an undivided whole, without separation as between the beneficiaries hereunder, but no such holding shall defer the vesting of any estate in possession, or otherwise, according to the terms hereof."

From a legal standpoint, most of the cases which involve the question of whether a trust instrument creates a single trust or multiple trusts have arisen in the context of a federal income tax dispute involving the tax saving consequences available through the use of multiple trusts for income-splitting purposes under I.R.C. § 641(a). Since these decisions follow the standard rules for the construction of trust instruments, they are equally applicable to the case at hand.

The interpretive rules begin with the familiar point that the intention of the settlor as expressed in the trust instrument is the key inquiry. *Commercial Bank v. United States*, 450 F.2d 330 (5th Cir. 1971); *Moody Trust v. Commissioner of Internal Revenue*, 65 T.C. 932 (1976). This is a rather conventional point, made by this Court in *Wheeling Dollar Savings & Trust Co. v. Hanes*, ___ W.Va. ___, 237 S.E.2d 499, 503 (1977), and to which is often added the qualification that such intention may not violate some positive rule of law or public policy. Syllabus Point 1, *Farmers & Merchants Bank v. Farmers & Merchants Bank*, ___ W.Va. ___, 216 S.E.2d 769 (1975); Syllabus Point 4, *Weiss v. Soto*, 142 W.Va. 783, 98 S.E.2d 727 (1957). We have used this rule with regard to testamentary trusts. *Berry v. Union National Bank*, ___ W.Va. ___, 262 S.E.2d 766 (1980); *Goetz v. Old National Bank*, 140 W.Va. 422, 84 S.E.2d 759 (1954). The same rule would obviously apply to an intervivos trust, such as the

one here under consideration. We have also stated that in ascertaining intent, the entire document should be considered. Syllabus Point 5, *Weiss v. Soto, supra.*

In considering whether the settlor intended to create a single trust or multiple trusts, a number of factors must be considered. One is whether the trust language uses the singular word "trust," *Hale v. Dominion National Bank*, 186 F.2d 374 (6th Cir. 1951), *cert. denied*, 342 U.S. 821, 96 L. Ed. 621, 72 S.Ct. 41, or the plural "trusts," *Lane v. United States*, 83 F. Supp. 260 (E.D. Mo. 1948). *See, e.g., MacManus v. Commissioner*, 131 F.2d 670 (6th Cir. 1942); *State Savings Loan & Trust Co. v. Commissioner*, 63 F.2d 482 (7th Cir. 1933).

Some weight may be attached to the fact that the trust fund is not divided, but maintained as a single res, *Huntington National Bank v. Commissioner*, 90 F.2d 876, 878 (6th Cir. 1937), although this consideration is by no means conclusive, as established by *United States Trust Co. v. Commissioner*, 296 U.S. 481, 487, 56 S.Ct. 329, 332, 80 L. Ed. 340, 344 (1936).

Another factor is whether, if the instrument was construed in a particular fashion, the rule against perpetuities or some other positive rule of law would be violated. *Grace Trust v. Commissioner*, 13 T.C. 632 (1949). A provision in the trust instrument authorizing a flat amount to be distributed out of the corpus to all beneficiaries, without regard to any separation of the corpus, may suggest a single trust. *Hale v. Dominion National Bank, supra.* The practical consideration of the trust instrument by the settlor is accorded considerable significance by the court. *Helfrich's Estate v. Commissioner*, 143 F.2d 43, 46 (7th Cir. 1944); *Moody Trust, supra* at 937. Reference is also made to the trust disposition plan to determine if its provisions relating to the various beneficiaries are so interwoven as to preclude the intention of multiple trusts. *Commercial Bank v. United States, supra* at 330-31; *Moody Trust, supra* at 938.

This list of factors, while not exhaustive, is sufficient for the disposition of this case. An analysis of the trust

under the foregoing factors clearly demonstrates that the settlor created a unitary trust.

The first sentence of Article I of the trust states:

"The Grantor is desirous of creating a trust for the purposes and upon the terms and provisions hereinafter set forth."

The singular term "trust" is used throughout the instrument except for several occasions. In each instance where the word "trusts" appears, the word is not used in the literal sense to designate multiple trusts, but rather to designate the various uses or purposes for which the trust estate is to be held. Thus, in Article I, after defining what constitutes the trust estate, the instrument states that it "shall be held and disposed of by the Trustee and its successors and assigns upon the following *trusts*, namely: . . ."

Article I continues with a number of subparagraphs which set out the trust purposes or uses, including payment of expenses and taxes out of income and, if such income is not sufficient, out of principal. Detailed provisions are made for the purpose of providing distribution of income and corpus to the various life and remainder beneficiaries.

The word "trusts" appears again in Article II, which sets out the administrative powers of the trustee, but the term here relates to administrative uses or purposes, as illustrated by the following language:

"The Trustee shall have the following powers, authority and discretion, namely:

"To continue to hold upon the trusts hereby created any or all of the property herewith or hereafter assigned or conveyed to the Trustee."

In several subparagraphs under Article II, the trustee is granted a number of specific powers relating to investing and reinvesting the trust property.

Another use of the word "trusts" occurs in Article VII, where the settlor provides the right for herself or any

other person to add to the trust property "which the Trustee is willing to accept to be held upon the trusts hereby created." Again, it is apparent that the term "trusts" as used here pertains to "uses" or "purposes."

It is not disputed that from the time of the creation of the trust in 1937 until the death of the settlor, the trust was treated as a unitary trust. Under Article IV, the settlor retained the power "to alter or amend any term or provision thereof." Had the settlor specifically intended to create separate trusts, it would seem that she would have done so prior to her death in 1960. Nor is there any dispute that from the date of the settlor's death to the present time, the trustee has treated the trust agreement as authorizing a single trust.

Perhaps the most compelling reason for concluding that a single trust was intended is found in the various provisions of the trust instrument relating to the disposition of trust income and principal. These provisions demonstrate that the settlor did not intend to divide the trust property into three separate shares, either when the trust was initially created or upon her death.

Under Article I, all of the trust income was made payable to the settlor during her life. At her death, the net income of the trust estate was made payable equally to her three named sons. It is apparent that during Mrs. North's life the trust was a single trust.

Because the trust continues for twenty years after the death of the last surviving life beneficiary, the provisions for distribution of the corpus are quite complex. There is an initial provision in the final distribution plan which we believe to be critical to the determination that the settlor intended a single trust until the time of the ultimate distribution. This provision resembles a specific bequest and is the first order for distribution.[1] It

---

[1] The material portion of the provision under Article I of the trust is:

"Upon the termination of the trust as hereinabove provided, the Trustee shall pay, convey, transfer and deliver the trust property

requires that the trustee pay $5,000 to each of the surviving spouses of both her three sons and their issue who are beneficiaries of the trust at its termination, providing that the total amount of these bequests not exceed 10% "of the total trust estate remaining in the hands of the Trustee." Obviously, neither the amount of this bequest nor its recipients can be determined until the termination of the trust. Moreover, it is apparent that these bequests are to be drawn from the total trust estate and distributed without regard to maintaining any equality among the three main branches of the family. The ultimate beneficiaries are the issue of Mrs. North's three sons who are living twenty years after the death of the last surviving son. The surviving husbands or wives of these ultimate beneficiaries, along with any surviving wife of a deceased son of the settlor, will receive a specific bequest, and such recipients could preponderate in one branch of the family.

A provision of Article II of the trust is somewhat analogous. It enables the trustee, in its sole discretion, to pay $2,500 in case of emergency to any life beneficiary "from the principal of the trust estate" in addition to the income that this beneficiary receives.[2] This provision

---

and funds, or the remainder thereof after the payment of all charges and expenses of the trust, as follows:

"To the surviving wives and/or husbands of Grantor's said sons and their issue who are beneficiaries of the trust at the time of termination thereof, the sum of five thousand dollars (5,000.00) each, provided the aggregate so paid to them shall not exceed 10% of the total trust estate remaining in the hands of the Trustee, and if the aggregate of such sums exceed 10% of the said trust estate, such payments shall be reduced proportionately.

"The residue of said trust estate shall be paid, conveyed, transferred and delivered to the living issue of the said Philip O. North, Thomas D. North and Edward D. North, per stirpes. . . ."

[2] The provision in its entirety at page 7 of the Trust is:

"The Trustee may (but shall not be required so to do, except in its sole discretion) from time to time, upon written request, pay over to any life beneficiary of the trust hereby created, in case of emergency, of the existence of which the Trustee shall be the sole judge, a sum or sums not exceeding twenty-five hundred dollars ($2,500.00) in any calendar year from the principal of the trust

suggests a single trust and empowers the trustee to invade the principal of the trust without regard to maintaining any equality among the beneficiaries by virtue of their family branch. This situation is analogous to that of *Hale v. Dominion National Bank*, 186 F.2d 374 (6th Cir. 1951), where a trust was created for four grandchildren and there was given to the trustee the power to pay "a beneficiary $5,000 in an emergency, out of the *invested corpus* of the estate." 186 F.2d at 376. [Emphasis in original.] In determining that it was not intended as a multiple trust, the court stressed this provision as indicating a single corpus:

> "The funds derived from royalties and credited pro-rata to the beneficiaries constituted the only available funds of the trust, and this is referred to in the instrument not as property of the beneficiaries but as the invested corpus of the estate. The grantor conceived the trust res to consist of both the formulae and the invested royalties with their accretions, a concept which we may not here disregard. And to make sure that emergencies would be taken care of out of investments of royalties, he provided that in no event should any part of the formulae be disposed of . . . ." [186 F.2d at 377].

The finding of a single trust in *Hale* was much more difficult than in the present case, since the instrument in *Hale* required "[a]ll income received shall . . . be divided into equal parts, one for each of the grandchildren, and placed to the separate credit of each such grandchild." 186 F.2d at 375.

Appellant here argues that the administrative provision of Article II, giving the trustee the right to hold the trust estate or any part thereof as an undivided whole without separation as between the beneficiaries there-

estate in addition to his or her share of the income provided to be paid to such beneficiary hereunder, and the written receipt of such beneficiary therefor shall be absolute protection to the Trustee and a discharge from all further accountability in respect to any payment or payments so made."

under, is indicative that multiple trusts were intended.[3] Even if we were to assume that this particular language suggests that the settlor intended that the trust estate be divided, we could not consider this administrative provision in isolation. The disposition of trust income provisions found under Article I is quite complex, since the income beneficiaries include not only the three named sons, but the living issue of a deceased son and also their wives or husbands in certain instances. The settlor may have intended that separate income accounts for such beneficiaries would provide a proper segregation for the accounting purposes of the trustee. It is clear from the use of the word "may" that the trustee is not required to make any segregation and that the matter is entirely within his discretion. We cannot conclude that this provision evidences any mandatory direction on the part of the settlor to create multiple trusts.

The income distribution provision enables the trustee in its discretion to make payment either to the income beneficiary or "for the use and benefit" of such income beneficiary. The settlor also made it clear that an income beneficiary has only an interest for life.[4] The remainder interest does not vest in possession unless the beneficiary lives for the twenty-year period. All of these disposition provisions suggest that the settlor did not intend to create three separate trusts each independent of the other.

---

[3] "The Trustee may hold the trust estate or any part thereof as an undivided whole, without separation as between the beneficiaries hereunder, but no such holding shall defer the vesting of any estate in possession, or otherwise, according to the terms hereof."

[4] "Subject to the provisions hereinafter contained as to the disposition of the trust property at the termination of the trust by expiration of the period limited in the paragraph next hereinafter following, no beneficiary hereunder shall have any interest greater than an interest for life, and upon the death of any such beneficiary any income of the trust estate which may have accrued to the credit of such beneficiary during his or her lifetime undistributed by the Trustee shall be paid to the person or persons who are entitled to such beneficiary's share of said income under the provisions of this trust." [Page 3 of Trust].

When the disposition provisions are coupled with the fact that the terms "trust estate" or "trust" preponderate throughout the instrument, and that where the word "trusts" is used it can be understood to mean uses or purposes, we cannot escape the conclusion that the trust instrument created but a single trust. Reinforcing this conclusion is the conduct of the settlor throughout her life in permitting the trust to operate as a single trust when she had the power to alter or amend it. Finally, the trustee has administered the trust as a single trust during the entire period from its creation in 1937 to the present time.

We conclude that the trust instrument created a single trust, and therefore affirm the holding of the Circuit Court.

*Affirmed.*