516 S.E.2d 516

**ONE VALLEY BANK, NATIONAL ASSO-CIATION, As Trustee Under A Certain Trust Agreement With Paul Wright, Grantor, Plaintiff Below, Appellee,**

v.

**Mark A HUNT, As Executor of the Last Will and Testament of Paul Wright, Deceased, et al., Defendants Below,**

**Mark A. Hunt, As Executor of the Last Will and Testament of Paul Wright, Deceased, Defendant Below, Appellant.**

No. 25428.

Supreme Court of Appeals of West Virginia.

Submitted March 9, 1999.

Decided June 15, 1999.

Thomas G. Freeman, II, Esq., John Philip Melick, Esq., Jackson & Kelly, Charleston, West Virginia, Attorneys for One Valley Bank, N.A.

Anthony F. Serreno, Esq., Hunt & Serreno, Charleston, West Virginia, Charles Phalen, Jr., Esq., St. Albans, West Virginia, Attorneys for M.A. Hunt.

Erwin L. Conrad, Esq., Conrad Law Offices, Fayetteville, West Virginia, Attorney for Constance P. Wright.

Raymond Keener, III, Esq., Billheimer & Keener, Montgomery, West Virginia, Guardian ad Litem for Eric S. Comstock.

David M. Fryson, Esq., Charleston, West Virginia, Guardian ad Litem for Briane E. Osborn, Dominique R. Osborn, Alyssa M. Wright.

PER CURIAM:

Paul Wright died testate. Prior to executing his will, he established a revocable trust. Upon his death, the issue arose as to whether the trustee should pay over the trust assets to the residuary beneficiaries under the will or to the executor of the estate to be distributed under the general terms of the will.

The trustee brought a declaratory judgment action, seeking the guidance of the Circuit Court of Kanawha County, West Virginia. The circuit court determined the trust property should be distributed to the beneficiaries named in the general residuary clause of the will. We affirm.

On November 29, 1994, Mr. Wright established a revocable trust with One Valley Bank, N.A., as the trustee. In the trust instrument Mr. Wright designated himself as the life beneficiary of the income from the trust and retained to himself the power to revoke the trust, and also retained power of testamentary disposition over the remainder or corpus of the trust. Paragraphs 9 and 10 of the trust agreement provide as follows:

(9) The Grantor reserves the right at any time prior to the Grantor's death to alter, modify or amend the terms of this trust, and to alter, modify or amend this Trust Agreement or any part thereof, provided that no such alteration, modification or amendment shall increase the duties or responsibilities of the Trustee without its consent. The Grantor further reserves the right to revoke this trust at any time *prior to the Grantor's death. No alteration, modification, amendment or revocation of this trust or of this Trust Agreement shall be valid or effective unless made in writing executed and acknowledged by the Grantor and the Trustee.* (Emphasis added.)

(10) If not sooner terminated, this trust shall terminate upon the death of the Grantor and the Trustee shall distribute the remaining trust property, including accumulated and undistributed income, to or for the benefit of such persons, including the Grantor's estate, either outright or upon such lawful estates, trusts, terms and conditions, and *subject to such lawful powers as the Grantor may by Will appoint, either by specific reference to this power or by general residuary clause.* If the Grantor shall fail to dispose of the entire trust fund by Will, the Trustee shall distribute the said trust fund and all interests there-

in, to the extent that the same shall not have been effectively appointed by the Grantor, to the estate of the Grantor. (Emphasis added).

Thereafter, on October 18, 1995, Mr. Wright executed a will. He nominated Attorney Mark Hunt to be executor of the will and "Trustee of my estate." The will begins by stating: "I, Paul Wright, . . . make this will and revoke any and all other wills and testamentary documents previously made by me." Mr. Wright made numerous specific bequests to family members and friends. He then added a residuary clause, which states:

H. Finally, after all my wishes and desires have been fulfilled, I devise and bequeath the residuary of my estate to my daughter, Constance Pamela Wright, and My Beloved Friend, Eric Scott Comstock, to be divided equally. Should either predecease the other before My Beloved Friend Eric Scott Comstock becomes eighteen (18) then their residual interest reverts to the other. Should neither Constance Pamela Wright or Eric Scott Comstock survive the probate of this Will, then the proceeds of the estate shall be distributed to my sister, Bonnie I. [sic] Lovin.[1]

The executor contends that Mr. Wright placed nearly all his assets, except his real estate holdings,[2] in the trust, and therefore, the specific bequests in the will cannot be satisfied without the assets of the trust. Mr. Wright's daughter, Constance Pamela Wright, one of the residuary beneficiaries, contends that less than forty percent of Mr. Wright's assets were placed in the trust. The record submitted on appeal does not contain these facts.

Paul Wright died on June 8, 1996. Upon his death, the question arose as to whether the trustee should pay the trust assets to the residuary beneficiaries under the will[3] as is stated in the trust document, or to the executor of the estate for administration and distribution under the general terms of the will. One Valley Bank, as trustee, brought a de-

---

1. Bonnie Lovin's name is corrected in ink on the document to read Bonnie J. Lovin.

2. Mr. Wright owned real estate in Charleston, West Virginia and in Virginia Beach, Virginia.

3. Both Ms. Wright and Mr. Comstock survived Mr. Wright and the probate of the will.

claratory judgment action seeking guidance from the circuit court. The trustee sought the appointment of guardians *ad litem* to represent residuary beneficiary Eric Scott Comstock and other minor specific beneficiaries, and other unnamed or unknown heirs. The bank, having determined that both sides of the dispute were represented by counsel, did nothing further in the litigation, and accordingly, the bank did not brief the issues or take any position beyond filing the original complaint.

The parties stipulated that this matter be determined by an interpretation of the documents. The circuit court found that it was "impermissible for preresiduary bequest[s] to be satisfied with the trust property" as no set of facts could be found which would allow a finding of intent to exercise the power of appointment and the will makes no specific reference to the power. The court concluded that "such reference is required if there is to be an appointment of trust property as to any preresiduary bequest, a proper reading of the documents require that the trust property be distributed by the Trustee to the beneficiaries named in the general residuary clause of the Will." The circuit court directed the trustee to distribute the trust assets to Ms. Wright and Mr. Comstock. It is from this order the executor appeals.

In her brief to this Court, Constance Pamela Wright states that the executor demanded and received $30,000.00 from the trustee shortly after Mr. Wright's death. She states that the trustee has repeatedly requested an accounting, which the executor has persistently failed to provide. She states she also requested an accounting, which she still has not received. She indicates she has repeatedly telephoned and written to the executor regarding an accounting, but the executor has not responded to her calls or letters. During oral argument before this Court, the executor's counsel was asked by this Court if the executor had received $30,000.00 from the trustee, and, if so, had he provided an accounting. The attorney arguing the case responded by stating that the executor received the money and that the funds were used to pay insurance on two houses, electric bills, etc. Counsel further asserted that the

executor has prepared an accounting; however, he did not know if the accounting has been filed with the proper authorities. We find it very disturbing that the executor simply ignored the numerous requests from various individuals regarding the accounting. This is indeed troubling and we should make it very clear that an accounting of this $30,000.00 must immediately be provided. Accordingly, the executor has ten days from the receipt of this opinion to file a complete and proper accounting with the County Commission of Kanawha County and to provide a copy thereof to Constance P. Wright. Any funds that have not been spent and any monies not accounted for must likewise be returned to the trustee immediately.

■ In this case, the executor argues the circuit court erred by determining that Mr. Wright failed to equitably or effectively revoke the trust by language contained in his will. The executor further argues the court then erred by ruling that the trustee should not be required to surrender the trust assets to the executor of the estate, but, instead should distribute the assets to the residuary beneficiaries under the will.

The executor concedes that Mr. Wright did not employ any words in his will to activate his power of appointment under the trust. He further concedes Mr. Wright did not revoke the trust according to the terms provided in the trust instrument. The executor argues, however, that no exact or precise words are required to invoke a power of appointment or to revoke a revocable trust. He contends that when the two documents are taken and read together, the intent of Mr. Wright is clear: he intended for the will to revoke the trust. Constance Pamela Wright argues the circuit court's decision is absolutely correct because the will made no specific reference to the power of appointment reserved in the trust and the will contains only a general residuary clause. For the reasons set forth below, we agree with Ms. Wright.

■ We are concerned here with two testamentary documents, a trust and a will. This Court has previously said that "[t]he paramount principle in construing or giving effect to a trust is that the intention of the

settlor prevails, unless it is contrary to some positive rule of law or principle of public policy." Syllabus Point 1, *Hemphill v. Aukamp,* 164 W.Va. 368, 264 S.E.2d 163 (1980). Similarly, "[t]he paramount principle in construing or giving effect to a will is that the intention of the testator prevails, unless it is contrary to some positive rule of law or principle of public policy." Syllabus Point 1, *Farmers and Merchants Bank of Keyser v. Farmers and Merchants Bank of Keyser,* 158 W.Va. 1012, 216 S.E.2d 769 (1975). Simply put, the intent of the testator/settlor prevails and governs the final outcome of this case. To determine Mr. Wright's true intent, these two documents must be read together.

Although Mr. Wright's will contains standard language stating that the will "revoke[s] any and all wills and testamentary documents previously made by me," the trust agreement reserves the right to revoke *only* before Mr. Wright's death and further provides that no revocation of the trust is valid unless (1) made in writing (2) executed and acknowledged by the grantor and the trustee. There is no question as to whether Mr. Wright presented the trustee with a written revocation which was executed and acknowledged by both; there is no such document.

The law in this area is well settled. "[A] trust which is subject to revocation can be revoked only in accordance with the terms thereof." 76 Am.Jur.2d *Trusts* § 92 (1991). Also, "[a]ttempts to modify or revoke [a trust] by will, considered as wills, have all failed.... A reserved power to modify or revoke during the settlor's lifetime cannot be exercised by his will." John P. Ludington, Annotation, *Exercise by Will of Trustor's Reserved Power to Revoke or Modify Inter Vivos Trust,* 81 A.L.R.3d 959, 961 (1977). The Restatement (Second) of Trusts § 330 cmt. j (1935) states in pertinent part:

> *j. Where method of revocation specified.* If the settlor reserves a power to revoke the trust only in a particular manner or under particular circumstances, he can revoke the trust only in that manner or under those circumstances.

* * *

If the settlor reserves a power to revoke the trust by a transaction inter vivos, as,

for example, by a notice to the trustee, he cannot revoke the trust by his will.

*See also* 76 Am.Jur.2d § 98 (1992) ("As a rule, a reserved power to revoke during the settlor's lifetime cannot be exercised by his will."); George Gleason Bogert and George Taylor Bogert, The Law of Trusts and Trustees § 1001 (2d ed. rev. 1983) ("A provision that the settlor must give notice to the trustee excludes the exercise of the power to revoke by the will of the settlor.")

In *Gamage v. Liberty Nat. Bank and Trust Co.,* 598 S.W.2d 463 (Ky.Ct.App. 1980), Robert Gamage, the executor of an estate, appealed an adverse summary judgment ruling. The issue on appeal was whether a living revocable trust agreement which allowed for revocation only upon written notice to the trustee could be revoked by the testator's will when the will specifically stated, "I dissolve the living trust...." The will was executed one hour prior to the testator's death and no written notice was provided which could be delivered to the trustee. The appellate court agreed with the trial court that the will did not revoke the trust.

In *Cohn v. Central Nat. Bank of Richmond,* 191 Va. 12, 60 S.E.2d 30 (1950), Sidney Stern executed an insurance trust wherein the trust agreement reserved the right to revoke the trust by written instrument delivered to the trustee. When Mr. Stern executed his will, he attempted to revoke the trust by explicitly stating that he was revoking the insurance trust agreement dated November 29, 1943. He directed that upon his death a copy of the will be delivered to the trustee. The trustee had no knowledge of the will until after Mr. Stern's death when the executors delivered a copy and demanded that the trust be turned over to them. The trustee refused and the heirs under the will brought a declaratory judgment action. The Supreme Court of Appeals of Virginia held that delivery of a copy of the will to the trustee after Mr. Stern's death did not revoke the trust.

In the cases mentioned above, the testators explicitly attempted to revoke their trusts by so stating in their wills. Even under those circumstances, the attempts

were found to be ineffective. *See also In re Estate of Henning,* 116 N.J.Super. 491, 282 A.2d 786 (1971) (Where language of deed of trust required that termination be by an instrument in writing delivered to the trustee during settlor's lifetime, settlor by her will could not revoke the trust); *Leahy v. Old Colony Trust Co.,* 326 Mass. 49, 93 N.E.2d 238 (1950) ("[I]t is settled that a power to revoke 'during the lifetime' of the settlor, which means by a revocation taking effect before the death of the settlor, cannot be exercised by a will that in the nature of things cannot take effect before the death of the testator"); *Connecticut General Life Ins. Co. v. First Nat. Bank of Minneapolis,* 262 N.W.2d 403 (Minn. 1977) ("It is the general rule that where a settlor reserves the power to revoke a trust by a transaction inter vivos, as for example by notice to the trustee, he cannot revoke the trust by his will.") In the case *sub judice,* Mr. Wright did not explicitly attempt to revoke the trust in his will. In fact, the will does not mention the trust at all. In view of the foregoing cases, even if the will in this case had specifically referred to the trust, the attempt to revoke would fail.

█ We think it fundamental and reiterate that a trust which is subject to revocation can only be revoked in accordance with the terms thereof. In other words, the right to revoke a trust can only be exercised in the manner specified in the trust agreement, and only by the person to whom the power is given or reserved. In this case, the trust agreement did not contemplate revocation after Mr. Wright's death. Mr. Wright reserved only the right to revoke the trust prior to . his death. A will speaks only upon the testator's death.

When considered and read together, the proper analysis of the two documents is that a specific reference in the will is required to appoint a person, in this case the trustee, to distribute the trust property other than to the residuary beneficiaries under the will. Also, the trust language states, "No . . . revocation of this trust or this Trust Agreement shall be valid or effective unless made in writing executed and acknowledged by the Grantor and the Trustee." That is clear and simple language. We must give effect to the words used. The revocation of the trust had to be effected during Mr. Wright's lifetime in accordance with the plain terms set forth in the trust agreement.

█ The terms of the trust agreement provide the method by which the trust assets will be distributed. Mr. Wright reserved the power to appoint a person to distribute the trust property by will, either by specific reference or by general residuary clause. The trust agreement also provides a default provision which states the trust assets will be distributed to the estate should Mr. Wright fail to effectively exercise the power of appointment. Mr. Wright chose not to exercise the specific power of appointment in his will. However, he did include a general residuary clause. Therefore, the trustee is directed to distribute the trust assets to the two residuary beneficiaries, Constance Pamela Wright and Eric Scott Comstock.

For the reasons hereinabove stated, the judgement of the circuit court is affirmed.

Affirmed.