# CHARLESTON.

### James McKown *v.* John S. McKown *et als.*

Submitted April 24, 1923.   Decided May 8, 1923.

1. Wills—*Devise to Children after Death of Wife Held to Create in Each Defeasible Fee; Devise to Survivor of Testator's Children of Share of Child Dying Without Issue Held not to Vest Present Interest in Children of Living Devisees.*

   M devised to his six children, naming them, his home farm using the following words: "To be held, owned and enjoyed after the death of my said wife, by my two sons and four daughters in equal shares; that is to say each is to have one-sixth part of my real and personal estate after the death of my said wife, but if either of my six children above named should die before the death of my wife, or after her death, or after my death, without living children or without a living child, I give devise and bequeath the share and portion of such of my children as may die to the *survivor* of my six children."

   This will created in each of the testator's six children a defeasible fee in the land.

   His widow died, and also one of his said six children died without living children, and without a living child. Held—The deceased child's interest passed to the surviving children in fee simple. Each of said devisees acquired a one-sixth interest in said land subject to be divested upon his or her death without having living children or without a living child and in that case said interest passes to the survivor of said six children, and the children of any one or more of said living devisees take no present interest in the land. (p. 690).

2. Partition—*Bill Held Good as on Demurrer.*

   A bill setting up said will and the interest of the parties in the land praying for partition of same and for general relief will be held good on demurrer. (p. 690).

3. Same—*Report of Commissioners not Set Aside for Error in Allotment, Unless Affirmatively Shown Grossly Unequal.*

   A report of commissioners in such suit will not be set aside on the ground that the commissioners erred in making their allotments, whereby an unequal partition has been made, except in extreme cases—cases in which, the partition is based on wrong principles, or it is shown by a very clear and decided preponderance of evidence, that the commission-

ers have made a grossly unequal allotment, and an exception to the report of the commissioners in such suit to the effect that the allotment is unfair, unsupported by any proof, is properly overruled. (p. 690).

4. Same—*Overruling Motion for Continuance to Secure Affidavits and Proofs of Exceptions to Commissioners' Report not Erroneous, Where Lack of Diligence Shown.*

Where an exceptor to the commissioners report in a partition case, moves the court to continue the case in order that he may obtain affidavits and proofs of his exceptions, and fails to support said motion by proof showing diligence in trying to secure said affidavits and proofs, the court below commits no error when it overrules said motion and confirms the report. (p. 696).

Appeal from Circuit Court, Jackson County.

Suit by James McKown against John S. McKown and others. From a decree for plaintiff, defendants appeal.

*Affirmed.*

*J. L. Wolfe, Lewis H. Miller, M. C. Archer,* and *K. K. Hyre,* for appellants.

*T. J. Sayre,* for appellee.

McGinnis, Judge:

This is a partition suit brought by James McKown, one of the devisees under the will of James McKown deceased, against the other four surviving devisees under said will; making the children of one of the survivors parties to same, which suit involves the construction of the will of the said James McKown deceased. It appears from the pleadings, that Fannie McKown, one of the devisees, had departed this life before the institution of this suit, and that John S. McKown was the only one of the surviving devisees who had living children, viz: Fred McKown and Catherine Foster. The court below over-ruled the demurrer of John S. McKown, one of the defendants, contrued the will, and partitioned the land and four of the defendants, to-wit; John S. McKown, Ella Perry, Lucy King and Sallie Board, assign eight errors to the rulings of the court below and bring the case here.

It appears, from the record, that the defendants Ella

Perry, Lucy King and Sallie Board, do not agree with their co-defendant, John S. McKown, as to how the will should be construed, nor do they entirely agree with the plaintiff on the construction of said will, as shown by their answers to the bill; but as to how the plaintiff, or either of the defendants, by their pleadings, construed the will, is immaterial, the effect of the pleadings in the case was to submit to the court the construction of the will, and, if, under the construction placed upon it by the court, the land could under the law be conveniently partitioned, and if susceptible of partition in kind to so partition same, and if not to have the same sold and the proceeds divided.

That portion of said will, the construction of which is in controversy, is as follows: ''I give, devise and bequeath unto my sons John S. McKown, and James McKown, and to my daughters Ella Hardman, Sallie Board, Lucy King and Fannie McKown, to be held, owned and enjoyed after the death of my said wife by said two sons and four daughters in equal shares; that is to say each is to have one-sixth part of my real and personal estate, after the death of my said wife; but if either one of my said six children, above named should die before the death of my wife, or after her death, without living children, or without a living child, I give, devise and bequeath the share and portion of such of my said six children as may so die to the survivor of my said six children.'' There does not seem to be any serious objection to the ruling of the court in over-ruling the demurrer to the bill, and we fail to see any reason why the demurrer should be sustained. Our statute and the decisions of this court confer upon courts of equity jurisdiction in partition suits: ''Tenants in common, joint tenants and coparceners, shall be compellable to make partition and the Circuit Court of the County wherein the estate or any part thereof may be, shall have jurisdiction in cases of partition, and in the exercise of such jurisdiction may take cognizance of all questions of law affecting the legal title that may arise in any proceedings.'' Sec. 1 Ch. 79 Barnes Code, *Warren* v. *Boggs,* 85 W. Va. 84; 97 S. E. 589. ''Equity has jurisdiction in cases of partition to settle all questions of title arising in the case.'' *Moore* v. *Harper,*

27 W. Va. 362; *Davis* v. *Tibbs,* 81 Va. 600; *Bradley* v. *Zehmer,* 82 Va. 635. It was argued that the court in this case should not have ordered partition of the land and should have sustained the demurrer, for the reason that, under proper construction of the will, the estate of Fannie McKown deceased and likewise the estate of any one of the original devisees, who took under the will and who may hereafter die "without living children, or without a living child" would be held in abeyance until such a time as all the original devisees were dead, and then descend from the "clouds" upon the surviving children in fee simple, and the land could not be partitioned until the happening of that event. There seems to be no brief in the case on this phase of the construction of the will, nor is this construction mentioned or insisted upon in any of the briefs filed; but this construction was ably presented in the oral argument of one of the counsel for John S. McKown, and passing on the question so raised, we find that Bouviers' Law Dictionary in giving a definition of the word "Abeyance", says "The condition of a free hold when there is no person in being in whom it vested, in such a case the freehold has been said to be *in nubibus (in the clouds)*"

In this case we hold that the estate of one of the original devisees, in case of death, without living children or without a living child passes, under the will, to the survivors in fee simple; that there are persons in being in whom this estate vests. "In a case where a life estate is devised to John, remainder to the heirs of Richard, the inheritance is plainly neither devised to John nor Richard, nor can it vest in the heirs of Richard till his death, *nam nemo est haeres viventis;* it remains therefore in waiting or abeyance, during the life of Richard." 1 C. J. (Note 8-a) 302, and in a case of that character there could be no partition until the vesting of the estate, but that is not the character of estate devised by the will in controversy. This will plainly sets forth to whom the estate passes after the death of the first taker without living children or without a living child, viz: "to the survivor of my said six children." It appears, however, from the briefs of the parties filed in this case, that all of the parties to the suit, except John S. McKown, accept the decision of the

lower court upon the construction of the will, and the said John S. McKown's contention now, is only different from the present contention of the other parties to the suit, as to the nature of the interest left by any one of the said devisees who should die without a living child, leaving any other of the six devisees surviving. John S. McKown contending that the interest left by any such devisee dying is the same kind of an estate as that created by the will. While all the other parties now contend that the interest of any such of the devisees dying without a living child is a fee simple absolute interest, and passes to the surviving devisees as such; and the will was so construed by the lower court.

John S. McKown, in his brief, cites in support of his contention, *Daniel* v. *Lipscomb et als,* 110 Va. 563 66 S. E. 850. It will be observed that the court, in that case, was passing upon quite a different will to the one in controversy in this case. In that case Mrs. Spencer bequeathed to her grandsons John S. and William Daniel an amount of money; her will providing that "if either of them should die leaving no child or descendants surviving, the share he receives under this will, to go to his surviving brother, and if both should die leaving no child or descendants, to be equally divided between the testatrix's children", John S. died without having a child and the court held that by the terms of the devise the estate passed to his surviving brother Wm. Daniel, subject to the same condition; that is, if William Daniel should die leaving no child or descendants surviving him, the estate would pass to the children of the testatrix. And, in discussing that case, the court draws a clear and well defined distinction between it and other cases decided by the Supreme Court of Virginia on apparently similar testimentary papers, and in discussing the case of *Pettyjohn Exors,* v. *Woodroofs Exors. et als* 77 Va. 507, says "It is greatly relied upon to sustain appellant's contention that William Daniel took a life estate, and his children a remainder in the land in controversy". In that case, the testator divided his estate equally between his six children and grandson, Seth Woodroof, and provided that "if any of the children should die without leaving lawful issue then the share of this child

so dying should revert to the surviving children," with similar limitation as to the share of the grandson, Woodroof, after attaining his majority, died unmarried and without issue; the court held that the grandson had a life estate in his share, with remainder to testator's children, contingent upon his dying without issue of his body." "There is nothing in the language of the will to justify the statement that Woodroof took a life estate in his share. The bequest was to the children and grandson generally, but with the provision that if any of the legatees should die without lawful issue his share should revert to the surviving children." That language as we have seen it applied to a devise of land, would not create a life estate in the first takers, but a defeasable fee." Possibly what the learned Judge meant by saying that Woodroof took a life estate in his share, was that in as much as he died without issue, his actual beneficial enjoyment was for life, since "at his death without leaving lawful issue" the share, shifted to others. But, however that may have been, the limitation over in that case was to testators six children, and the court properly so held. While in this case the ulterior limitation, in the case of William Daniel dying without child or descendants surviving is to the children of the testatrix Mrs. Spencer." The court in this case also discussed the case of *Warring* v. *Warring*, 96 Va. 636.

In *Armstead* v. *Hart*, 97 Va. 318, the court says: "That the law is well established that only original and not accrued shares survive in the absence of a positive and distinct indication of intent in the will that the latter shall survive." 2 Jarman on Wills (Vol. 2) 2115; *Brooks* v. *Croxton*, 2 Grat. 509.

The will in controversy in this case, devises to each of the original devisees one-sixth of said lands which interest will be divested only upon the condition that he or she die "without living children or without a living child"; and on condition that if he or she shall die before any of his or her co-devisees, and upon the death of any one of said devisees without a living child, his or her interest passes, under the will, to the survivors, share and share alike, in fee simple.

And this is substantially the construction placed upon said will by the court below; said court decreed a partition of said land in accordance with said construction and appointed three commissioners, and required them to go upon said lands and partition and allot the same among said five parties allotting to the plaintiff the undivided one-fifth of said real estate and said John S. McKown and Lucy King, Ella Perry and Sallie Board, the four-fifths of it together, and if the same can be conveniently done, and if not then said commissioners were to assign and give their reasons why the real estate cannot be partitioned among them.

These commissioners, after being sworn, and after giving notice to all the parties in interest, went upon the land on April 25, 1922 and partitioned and laid off to the plaintiff James McKown 93 acres and 37 square poles of said land; and the residue thereof containing 329 acres and 93 square poles was laid off and alloted to the defendants John McKown Lucy King, Ella Perry and Sallie Board in one tract, and each of said allotments were definitely described by metes bounds, corners, courses and distances, and said report was returned in court on the 6th day of May 1922.

To this report there were exceptions, but just what these exceptions were do not appear; however, the court upon motion of the defendants appointed two additional commissioners to assist in dividing and partitioning said lands and the court, by consent of the parties, appointed G. W. Swisher and Wade Hickman, and directed all of said commissioners to go upon the premises and partition the same among the several parties in accordance with the former decree, and report to a special term of said court, to be held on the 13th day of May 1922, to hear and determine the cause''. In pursuance of the said order all of said commissioners, after all the parties had accepted notice, ''that said commissioners would on the 13th day of May 1922, proceed to execute said order.'' on that day after being duly sworn, went upon the land, all the parties except John McKown being present either in person or by counsel, and after looking over said premises and having carefully considered same, adopted the report made by the commissioners and returned to court on

the 6th day of May, 1922. This report was signed by all of the five commissioners, so appointed, and returned to court on said 13th day of May 1922. To this report the defendants John McKown, Lucy King, Ella Perry and Sallie Board, excepted setting up substantially that said partition did not assign to the defendants their equal one-fifth part of said land according to quality and quantity, also setting up certain facts to support said exception, also stating that the report was made after four o'clock in the afternoon of that day and "these defendants neither had time nor opportunity to procure affidavits or other proof to sustain said exceptions, and that they could sustain said exceptions if given time to do so;" defendants also objected to the confirmation of said report, stating in said objections certain reasons why affidavits and proofs of their exceptions could not at that time be made.

The lower court overruled these exceptions and confirmed the report and ordered the land partitioned according to same and the defendants assign as error, the action of the court in overruling said exceptions and refusing to give defendants time to procure affidavits and proofs of the same.

These defendants had ample notice that this matter would be determined on the day this report was submitted, by an order of the court, they had also accepted notice that the commissioners would make the report on that day; and, on that day, they were unprepared to meet by affidavits or proof the allegations set forth in their exceptions. We do not think that the defendants used that degree of diligence which is required under such circumstances to continue the case, and there being no proof of the exceptions, the court committed no reversible error, in overruling the same and decreeing a partition of the land.

"The report of the commissioners in such suit is not final and may be set aside by the court. But when the court is asked to quash or set aside the report, on the ground that the commissioners erred in making their allotments, whereby an unequal partition has been made, it will not do so except in extreme cases—cases in which the partition is based on wrong principles, or it is shown by a very clear and decided

preponderance of evidence, that the commissioners have made a grossly unequal allotment.'' Point 4 Syllabus *Henrie* v. *Johnson,* 28 W. Va. 190.

We therefore, affirm the decision of the lower court.

*Affirmed.*