EDWARD DINGESS AND RHODA WILSON

*v.*

MOLLIE DRAKE, *et al.*

(No. 10312)

Submitted January 17, 1951.   Decided March 1, 1951.

*Charles L. Estep, Mark T. Valentine, Casto & Wilson,* and *R. H. Casto,* for appellants.

*M. O. Litz, H. D. Rollins,* for appellees.

LOVINS, JUDGE:

Edward Dingess and Rhoda Wilson instituted this suit in the Circuit Court of Logan County against Mollie Drake, Aileen Drake Dye, Naaman Jackson, Alice Dingess, David Dingess, Inia Dingess, Berry Conley, Will Neal, Hugh Conley, J. W. Brown, W. D. Wilson, Charlie Conley, Tennessee Turner, Carl J. Wiedeman, Mary Scaggs, Casey Scaggs, Elva Scaggs, Arizona McComas, Mary A. Farmer, O. M. Conley, Merrill Coal Mines, Inc., a corporation, and United Fuel Gas Company, a corporation, defendants. The judge of the Circuit Court of Logan County, considering himself disqualified to hear and determine this suit, transferred the same to the Circuit Court of Kanawha County. The suit having been submitted on pleadings and proof, the trial court entered a decree upholding the contentions of plaintiffs. From that decree defendants, Mollie Drake, Aileen Drake Dye, Naaman Jackson, Carl Wiedeman, Merrill Coal Mines, Inc., and Lawson Heirs, Inc., prosecute this appeal, and they will be hereinafter designated collectively as defendants.

We note that Lawson Heirs, Inc., is not a party to this suit, though the name of that corporation is appended to the petition for an appeal. It is also noted that a number of defendants who are parties defendant do not appeal from the decree pronounced by the Circuit Court of Kanawha County.

The principal question here presented relates to the construction of the will of Hugh Toney, a resident of Logan County, who died in 1895.

504

The will, omitting the formal parts, reads as follows:

"1st: I give and bequeath [sic] to my beloved sister, Mary Toney, all my right, title and interest in and to real estate derived from my Father, William Toney, deceased, and Overton Toney, deceased, during her Natural life and after her death, to Mollie Dingess and Yantie Dingess children of Allen Dingess, deceased, to the survivor or survivors of them.

"2nd: I give and bequeath [sic] all my other real estate to Mollie Dingess & Yantie Dingess, children of said Allen Dingess, deceased.

"3rd: I give and bequeath to my sister, Mary Toney, all my personal property and also in [sic] Thousand Dollars in debts.

"4th: I give and bequeath to said Mollie and Yantie Dingess, all the balance of my personal estate, including money debts dues & demands.

"5th: In the event that said Mollie and Yantie die without issue then and in that event I give and bequeath [sic] said real estate herein bequeather [sic] to Edward Dingess & Rhoda Dingess, children of James I. Dingess."

The sixth paragraph appointed S. S. Altizer executor of the will, and requires no further mention.

The oral testimony is helpful but not controlling in disposing of this controversy. It is shown by such testimony that Hugh Toney, unmarried, was the owner of a store at or near Chapmanville, in Logan County; that he was in comfortable circumstances; that in addition to operating his store he was engaged in timbering operations. Yantus Dingess and Mollie Dingess were the orphan grandnieces of Hugh Toney and lived with him in his home. Mary Toney, an unmarried sister of the testator, also lived with him. The exact date of Mary Toney's death is not disclosed, but it is a reasonable assumption that she departed this life sometime before the institution of this suit. The plaintiffs, Edward Dingess

and Rhoda Dingess, the latter being hereinafter referred to as Rhoda Wilson, are the grandnephew and grandniece of the testator. They lived on the opposite side of the Guyan River near the testator's home. Edward Dingess, at the time of his uncle's death, was approximately twenty years of age and Rhoda Wilson was approximately thirteen years of age.

Yantus Dingess and Mollie Dingess were reared and cared for by the testator and his unmarried sister as if they were the testator's children. The testator and his sister seemed to have also loved and cherished Edward Dingess and Rhoda Wilson, the latter, when a small child, having frequently visited the testator's home. The parents of Edward Dingess and Rhoda Wilson survived the testator and were, at the time of his death and thereafter, in prosperous circumstances.

Yantus Dingess intermarried with Naaman Jackson and will be hereinafter referred to as Yantus Jackson. She departed this life in the year 1937, without issue surviving. Her husband, Naaman Jackson, survived her. Mollie Dingess intermarried with Leo F. Drake and will be hereinafter designated as Mollie Drake. She is living and has issue. The defendant, Aileen Drake Dye, is her daughter and that daughter is the mother of one or more children, now living.

Hugh Toney executed his last will and testament under date of February 2, 1894, the attesting witnesses being J. A. Nighbert, T. C. Whited and S. S. Altizer. S. S. Altizer was the draftsman of the will, its executor, and, at the time it was written as well as at the time it was probated, was the Clerk of the County Court of Logan County, West Virginia.

The will was admitted to probate on March 21, 1895, upon the testimony of two of the attesting witnesses. The admission to probate was approved by the County Court of Logan County on June 10, 1895. The subscribing witnesses, the executor, the members of the county court at the time the will was probated, and the deputy clerk

of such court, who acted in admitting the will to probate, are now deceased.

This suit was instituted June 9, 1938. The final decree herein was entered on December 28, 1949. The trial court held that Mollie Drake and Yantus Jackson took the land mentioned in the first paragraph of the will, subject to the life estate of Mary Toney; that upon the death of Mary Toney, Yantus Jackson and Mollie Drake were vested with a fee simple by survivorship, and that upon the death of Yantus Jackson, Mollie Drake and her grantees were vested with a fee simple estate in such land. The trial court further decreed that Mollie Drake and Yantus Jackson each took a base or qualified fee in a one-half undivided interest in all the residue of the lands of the testator devised by the second paragraph of the will; that the base or qualified fee so taken by them was determinable as to a one-half undivided interest upon the death of either Mollie Drake or Yantus Jackson, without issue surviving; and that the one-half undivided interest of Yantus Jackson, upon her death without surviving issue, vested in Edward Dingess and Rhoda Wilson in fee simple, subject to the rights of any persons created by deeds, conveyances or writings made by Edward Dingess and Rhoda Wilson, or either of them, affecting their interest in the lands. The decree further held that Edward Dingess and Rhoda Wilson were entitled to a contingent interest in the remaining one-half undivided interest in the lands referred to in paragraph two of the will, which would become vested only if and when Molly Drake should die, without issue living at the time of her death.

The trial court restricted its decree to a construction of the will of Hugh Toney as it affects the lands disposed of by such will, and reserved for future consideration and determination the rights of persons arising independently of such will or otherwise.

Before considering the controlling paragraphs of the will it is appropriate to say that the third and fourth

paragraphs of the will disposed of personal property, and no question having been raised as to the disposition of such property, the consideration of those paragraphs is of no moment except insofar as they may be considered as indicia of the testator's intention.

It is seen from the foregoing that the determination of this suit depends upon the meaning and effect given the fifth paragraph of the will. It is conceded by plaintiffs that the fifth paragraph of the will reduced the fee simple estate devised by the second paragraph to a base or qualified fee, but they do not accede to defendants' contention that the fifth paragraph reduced the fee simple estate in all of the lands devised by the will of Hugh Toney, including those described in the first paragraph, from a fee simple to a base or qualified fee.

The plaintiffs contend that the base or qualified fee devised to Yantus Jackson was determined upon her death, without issue, and that her one-half interest passed to the plaintiffs.

The defendants contend that the words of survivorship in the first paragraph of Hugh Toney's will referred to the death of Mary Toney; that all the lands owned by Hugh Toney at the time of his death were devised to Mollie Drake and Yantus Jackson as a base or qualified fee subject to the life estate of Mary Toney in the lands described in the first paragraph of the will; that the defeasance of such estate has not taken place and will not take place unless and until Mollie Drake shall die without issue her surviving.

The language employed by the testator in his will is free of ambiguities. As was said by Judge Snyder in the case of *Couch v. Eastham,* 29 W. Va. 784, 788, 3 S. E. 23: "The provision or clause of the will now under consideration is expressed in plain, unambiguous terms. The objects of the testator's *bound* [bounty] as well as the subjects disposed of are fully identified. According to the rules before stated, it seems to me, there is very little room for any attempt to construe this will. To undertake,

to do so, can be little more than to repeat its provisions."
Nevertheless it is incumbent upon this Court to give effect to the meaning of the will.

Precedents in will cases serve only to establish general principles applicable alike to all. Among those general principles are: The intention of testator must be given effect unless some positive rule of law is violated. *Hinton v. Milburn,* 23 W. Va. 166; *Couch v. Eastham, supra; McCreery v. Johnston,* 90 W. Va. 80, 110 S. E. 464; *Brookover v. Grimm,* 118 W. Va. 227, 190 S. E. 697. In ascertaining the intention of testator the entire will is to be considered. *Hayes v. Freshwater,* 47 W. Va. 217, 34 S. E. 831; *Woodbridge v. Woodbridge,* 88 W. Va. 187, 106 S. E. 437. When language is sufficiently expressive the direct inquiry is what does it express; conjecture and surmise are not proper. *Couch v. Eastham, supra; Neal v. Hamilton Co.,* 70 W. Va. 250, 73 S. E. 971. Any language, technical or otherwise, which clearly indicates the intention of testator to dispose of his property to certain persons, either named or ascertainable, is sufficient for the purpose of a will. *Runyon v. Mills,* 86 W. Va. 388, 103 S. E. 112.

In argument and brief, counsel raise a question with reference to the time when the words of survivorship take effect. The intention of testator as gathered from consideration of his will governs. *National Bank v. Kenney,* 113 W. Va. 890, 170 S. E. 177. We think that the intention of the testator in the instant case clearly indicates that the words of survivorship in the first paragraph of the will referred to the death of Mary Toney, the life tenant, and that the time of survivorship, implicit in the other paragraphs of the will, referred to the death of the testator. See *National Bank v. Kenney, supra.*

Applying the foregoing general principles to the will here considered, we hold that Hugh Toney devised to his sister, Mary Toney, a life estate in the real estate mentioned in the first paragraph of his will and that Yantus Jackson and Mollie Drake should take a base or qualified fee by way of a contingent remainder therein if they

survived the life tenant, and that, in the event either died before Mary Toney, the surviving remainderman should take the entire estate. The contingent character of the remainder arises from the fact that if one remainderman died before the demise of the life tenant the survivor should take the entire estate. The classification of the remainder as contingent is unimportant since both Yantus Jackson and Mollie Drake survived the life tenant.

The second paragraph of Hugh Toney's will, when considered alone, devised to Mollie Drake and Yantus Jackson a fee simple in all the land belonging to the residuary estate of Hugh Toney. But the fifth paragraph of the will reduces the fee simple so devised to a base or qualified fee.

A devise or conveyance of land in fee simple leaves nothing to be disposed of by the testator or owner, and it may be somewhat illogical to say that a fee simple may be limited in the same land after a fee has been given to the first taker. Nevertheless, the respect accorded to the intention of a testator is one of the reasons advanced for giving validity to an executory devise creating a base or qualified fee. See *Pells* v. *Brown*, Cro. Jac. 590, 79 English Reprint 504; *Porter* v. *Bradley*, 3 Term R. 145, 100 English Reprint 500. In the case of *Van Horne* v. *Campbell* (N. Y.), 3 N. E. 316, the origin, development and effect of the decisions in the two English cases are discussed and analyzed, as follows:

"* * * Since that time, [when the decision in *Pells* v. *Brown* was made] executory devises limiting a fee after a fee, upon some contingency operating to defeat the estate of the first taker, as upon his death without issue, or other specified event, have become common forms of assurance.

"The common-law doctrine of repugnancy between the two estates, which, as has been said, was perfectly rational upon the assumption upon which it proceeded, has given way to the more just and reasonable view which regards the prior gift, although made in words

which, standing alone, import an absolute estate, as restrained by the subsequent limitation, and as conferring only a qualified estate. This prior estate, although properly denominated a fee, because it may last forever, is nevertheless a base or determinable fee, because it is liable to be defeated by the happening of the contingency upon which it is limited. * * *"

While some distinction has been drawn in texts and judicial opinions between a base or qualified fee and a fee to end upon the happening of a condition subsequent, we think it suffices to say that a conditional fee does not terminate until the entry of the person entitled to take the estate upon the happening of the condition. A base or qualified fee terminates upon the occurrence of the event upon which it is limited and without entry. See *Lyford* v. *City of Laconia* (N. H.), 72 A. 1085. *Fuller* v. *Wilbur* (Mass.), 49 N. E. 916. 1 Minor on Real Property, 2d Ribble, Section 165. A base or qualified fee is defined in the following language: "An estate in fee simple defeasible is an estate in fee simple which is subject to a special limitation * * *, a condition subsequent * * *, an executory limitation * * * or a combination of such restrictions." Restatement of the Law of property, §16. The validity of a base or qualified fee has been upheld by this Court. *McKown* v. *McKown,* 93 W. Va. 689, 117 S. E. 557; *Kidwell* v. *Rogers,* 103 W. Va. 272, 137 S. E. 5; *Stephenson* v. *Kuntz,* 131 W. Va. 599, 49 S. E. 2d 235. An estate may be made to commence *in futuro.* Code, 36-1-9.

Coming to the inquiry whether a base or qualified fee, as created by the will here considered, is transmissible, we think such fee is a substantial estate and may go to an heir at law under the statutes of descent, to a devisee by will, or to a grantee by deed before the contingency upon which the fee is limited happens, subject to the defeasance upon which it is limited. *Kidwell* v. *Rogers, supra; Stephenson* v. *Cavendish,* 134 W. Va. 361, 59 S. E. 2d 459. It follows that if the base or qualified fee in the lands of Hugh Toney, devised by his will, were vested

in Mollie Drake and Yantus Jackson, such estate would descend to their heirs at law, their devisees, or grantees, subject to be defeated in the hands of such heirs, devisees or grantees by the happening of the contingency upon which such fee was limited. *Stephenson* v. *Cavendish, supra.*

Has the contingency specified in the fifth paragraph of the will happened? The language of the fifth paragraph in no wise indicated that the testator contemplated that his lands should be divided and that a one-half undivided interest therein should go to the plaintiffs upon the death of either Mollie Drake or Yantus Jackson, without issue surviving. Nor does the fifth paragraph indicate that the death of either of the grandnieces should operate to determine the base or qualified fee devised to them.

Giving the words of the will their plain meaning, and carrying out the plainly expressed intention of the testator, we reach the conclusion that all of the lands devised by the will of Hugh Toney are vested at this time in Mollie Drake, or her grantees, and the persons rightfully claiming under Yantus Jackson. The estate so vested is a base or qualified fee in the hands of the present owners and will so remain a base or qualified fee until the death of Mollie Drake. Upon her death, without issue surviving, the base or qualified fee will determine. At present, Mollie Drake has living issue. If such issue survives her, the base or qualified fee will become a fee simple absolute in the hands of the rightful owners.

In accordance with the foregoing, the decree of the Circuit Court of Kanawha County is reversed and this suit is remanded to that court with directions to enter a decree in accordance with the principles stated in this opinion.

*Reversed with directions.*