EULA REEDY

*v.*

BETTY LOU PROPST, *et al.*

(No. 15233)

Decided March 11, 1982.

*Geary and Geary and James Paul Geary* for appellants.

*Sponaugle and Sponaugle, George I. Sponaugle and George I. Sponaugle II,* for appellee.

MCGRAW, JUSTICE:

This is an appeal from a decision of the Circuit Court of Pendleton County which held that the adoption by the

appellee, Eula Reedy, of her adult stepson satisfied a condition imposed by the will of Harvey A. Propst, so as to vest in the appellee fee simple title to an undivided one-half interest in certain real estate devised by the will. The appellants, Betty Lou Propst and other heirs of Harvey A. Propst, contend that the decision of the circuit court is erroneous as a matter of law because it fails to give effect to the intent of the testator, Harvey A. Propst, and improperly interprets prior decisions of this Court regarding the rights of adopted children. We agree with the appellants' contentions and reverse.

Harvey A. Propst executed his last will and testament on January 12, 1967. A portion of the will devised real estate to his two daughters, Betty Lou Propst and Eula Reedy. Under this portion of the will each daughter received an undivided one-half interest in certain real estate. The interest of Betty Lou vested without condition. The interest of Eula vested "upon the condition that a child or children are born of her body, and if there is no child born to the said Eula Reedy, then the one-half undivided interest in real estate herein given to Eula Reedy shall go to my daughter, Betty Lou Propst if the said Betty Lou Propst survives the said Eula Reedy, and if Betty Lou Propst does not survive Eula Reedy, then said real estate shall go to my next legal heirs."

At the time the will was executed Betty Lou Propst was unmarried, without children, and living in the testator's home. Eula Reedy, then 39 years of age, was not living at home, having married Arnold Reedy on March 27, 1966. Mr. Reedy had a son by a previous marriage, but no children have been born from his marriage to Eula.

Harvey A. Propst died September 9, 1976 and his will was admitted to probate on September 27, 1976. On May 24, 1977, the appellee instituted a civil action in the Circuit Court of Pendleton County challenging the validity of the will. In her complaint she alleged that the terms of the will were too ambiguous to construe, and that it was the product of the undue influence of Betty Lou Propst on the testator.

In October 1979 at the age of 52, the appellee adopted Douglas Reedy, her 23 year old stepson. In November 1979 she filed an amended complaint alleging that she was the adoptive mother of Douglas Reedy, and thus had satisfied the condition imposed by the will that a child be born of her body.

The circuit court held that the adoption satisfied the condition of the will of Harvey A. Propst so as to vest the appellee with fee title to an undivided one-half interest in the real estate free of any remainder over in favor of Betty Lou Propst.[1] The appellants appeal from that decision.

There are two issues presented by this appeal: (1) did the adoption by the appellee of her adult stepson satisfy the condition imposed by the will of Harvey A. Propst; and (2) if not, what interest does the appellee currently have in the real estate devised.

## I.

The cardinal rule in the construction of testamentary instruments is that a court should give effect to the intent of the testator. *Union Nat'l Bank of Clarksburg v. Nuzum*, ___ W.Va. ___, 280 S.E.2d 87 (1981); *Hemphill v. Aukamp*, 164 W.Va. 368, 264 S.E.2d 163 (1980); *Berry v. Union Nat'l Bank of Clarksburg*, 164 W.Va. 258, 262 S.E.2d 766 (1980); *Wheeling Dollar Savings & Trust Co. v. Hanes*, 160 W.Va. 711, 237 S.E.2d 499 (1977). The testator's intent will be implemented so long as it does not violate a positive rule of law or established public policy. *Hemphill v. Aukamp*, *supra*; *Berry v. Union Nat'l Bank of Clarksburg*, *supra*; *Emmert v. Old Nat'l Bank of Martinsburg*, ___ W.Va. ___, 246 S.E.2d 236 (1978). The intent of the testator is normally ascertained from the words used by him, which should be given their common and ordinary meaning. *See,*

---

[1] Apparently, the appellee's claims that the will was too ambiguous to construe, and that it was the product of undue influence, were abandoned during the course of litigation, for the trial court's opinion fails to address these issues. Upon remand, the trial court should indicate the disposition of these claims.

*e.g., Loar v. Massey,* 164 W.Va. 155, 261 S.E.2d 83 (1979); *Security Nat'l Bank & Trust Co. v. Willim,* 151 W.Va. 429, 153 S.E.2d 114 (1967), *overruled on other grounds, Wheeling Dollar Savings & Trust Co. v. Hanes, supra.* The court below found that the testator did not intend to exclude an adopted child from fulfilling the condition imposed by his will, and therefore held that the adoption by the appellee of her adult stepson satisfied the condition "that a child or children are born of her body . . . ." In determining the intent of the testator the trial court relied upon our decision in *Wheeling Dollar Savings & Trust Co. v. Hanes,* 160 W.Va. 711, 237 S.E.2d 499 (1977). We held in syllabus points 2 and 3 of that opinion:

> Any testamentary or inter vivos trust governed by the laws of the state of West Virginia, regardless of the date of its execution . . . shall be construed under the provisions of *W. Va. Code,* 48-4-5 [1969][2] and adoptive children shall take

---

[2] W. Va. Code § 48-4-5 [1969] specifies the inheritance rights of adoptees. It provides:

Upon the entry of such order of adoption, the natural parent or parents, any parent or parents by any previous legal adoption, and the lineal or collateral kindred of any such parent or parents, except any such parent who is the husband or wife of the petitioner for adoption, shall be divested of all legal rights, including the right of inheritance from or through the adopted child under the statutes of descent and distribution of this State, and shall be divested of all obligations in respect to the said adopted child, and the said adopted child shall be free from all legal obligations, including obedience and maintenance, in respect to any such parent or parents. From and after the entry of such order of adoption, the adopted child shall be, to all intents and for all purposes, he legitimate issue of the person or persons so adopting him or her and shall be entitled to all the rights and privileges and subject to all the obligations of a natural child of such adopting parent or parents.

For the purpose of descent and distribution, from and after the entry of such order of adoption, a legally adopted child shall inherit from and through the parent or parents of such child by adoption and from or through the lineal or collateral kindred of such adopting parent or parents in the same manner and to the same extent as though said adopted child were a natural child of such adopting parent or parents, but such child shall not inherit from his or her natural parent or parents nor their lineal or

under any provision which uses the words "child" or "children," or any general words which are loosely, if not technically, synonymous with the words "child" or "children," including . . . by way of example and not by way of limitation, such words as "natural children," "descendants," "heirs," "issue," or any other similar language.

In order for an adoptive child to be excluded from the benefits of a testamentary or inter vivos trust which would have been accorded to him had he been a natural child of his adoptive parents, such testamentary or inter vivos trust must specifically exclude adoptive children by explicit language. (Footnote added.)

Prior to *Hanes* the rule in West Virginia was that an adopted child was not entitled to property devised or bequeathed to a "child," "children" or "issue" of the adoptive parent unless a contrary intent was disclosed by the will. *See, e.g., Security Nat'l Bank & Trust Co. v. Willim, supra. Hanes* reexamined this rule in light of the policy of W. Va. *Code* 48-4-5, which places adopted children on an equal level, with respect to rights of inheritance, with biological offspring. In *Hanes* we recognized that until recent times the question of adopted children probably did not stand out in the minds of most testators, and therefore the meaning to be assigned to such words as "issue," "descendants," and "child," when used in a testamentary instrument, is usually ambiguous and subject to construction or interpretation.

In formulating the rule which presumes that adopted children are included within the terms "child," "issue," "descendants," and similar language, we reasoned in *Hanes* that:

---

collateral kindred, except that a child legally adopted by a husband or wife of the natural parent shall inherit from the natural parent of such child as well as from the adopting parent. If a legally adopted child shall die intestate, all property, including real and personal, of such adopted child shall pass, according to the statutes of descent and distribution of this State, to those persons who would have taken had the decedent been the natural child of the adopting parent or parents.

> [M]ost testators and trustors establish trusts for the benefit of those persons they love and for the benefit of those persons yet unknown and yet unborn whom such testators and trustors infer that their loved ones will eventually love. While there may be testators and trustors who are so concerned with medieval concepts of "bloodline" and "heirs of the body" that they would truly be upset at the thought that their hard-won assets would one day pass into the hands of persons not of their blood, we cannot formulate general rules of law for the benefit of eccentrics. 237 S.E.2d at 503.

The *Hanes* decision was designed to further the legislative policy of placing adopted children upon an equal level with biological offspring for all intents and purposes, and thus in the usual case when the words "child," "issue," or "heirs," and other similar language are used in a testamentary instrument, they will be presumed to include adopted children. However, *Hanes* did not change the traditional rule that the intent of the testator should control the construction of the testamentary instrument, and we specifically recognized in *Hanes* that when a testator excludes adopted children from the terms of the testamentary instrument by explicit language, effect must be given to that intent.

In the case *sub judice* the language employed by the testator, *i.e.* "a child or children . . . born of her body," is clear and unambiguous. The words used by the testator indicate an element of biological origin absent from the more general terms "issue," "descendants," "child," "heirs," or "natural children." While we agree with the trial court's finding that the bond of love and affection that has grown between the appellee and her stepson is truly that of mother and child in all respects, that finding is not dispositive of the issue. It is clear from the language used by the testator that he intended that the appellee should take a fee simple interest only if she produces biological offspring—"a child or children . . . born of her body." *Cf. Tindol v. McCoy*, 535 S.W.2d 745

(Tex. Civ. App. 1976) ("children born to his body."); *First Nat'l Bank of Kansas City v. Waldron*, 406 S.W.2d 56 (Mo. 1966) ("children born in lawful wedlock."). This Court is obliged to give effect to that intent. Accordingly, we hold that the adoption by the appellee of her adult stepson failed to satisfy the condition imposed by the will of the testator that "a child or children are born of her body." The conclusion of the trial court to the contrary is erroneous.

## II.

We now reach the question of the nature of the estate given to the appellee by the will of Harvey A. Propst. The pertinent language of the will provides:

> I give, devise and bequeath the other one-half undivided interest ... unto my daughter, Eula Reedy, upon the condition that a child or children are born of her body, and if there is no child born to the said Eula Reedy, then the one-half undivided interest in real estate herein given to Eula Reedy shall go to my daughter, Betty Lou Propst if the said Betty Lou Propst survives the said Eula Reedy, and if Betty Lou Propst does not survive Eula Reedy, then said real estate shall go to my next legal heirs. The said Betty Lou Propst and Eula Reedy shall have the privilege of selling timber off the land herein given them during their lifetimes regardless of whether a child is born to Eula Reedy or not, but they both must agree to and share in any such sale.

In several respects the estate devised the appellee resembles a fee simple determinable, also called a base or qualified fee. Generally a fee simple determinable is created by any limitation which creates an estate in fee simple and provides that the estate shall automatically expire upon the occurrence of a stated event. *Woman's Club of Saint Albans v. James*, 158 W.Va. 698, 213 S.E.2d 469 (1975). The estate is one which may last forever, but whose duration is circumscribed by a condition which may never happen, but if it does happen, the estate is immediately at an end. *Talbot v. City of Norfolk*, 152 Va. 851, 148 S.E. 865 (1929). This Court has found fee simple

determinables to exist in situations where a fee simple estate is granted to a beneficiary under a will, with a limitation over in favor of another should the beneficiary die without issue. *Young v. Lewis*, 138 W.Va. 425, 76 S.E.2d 276 (1953); *Dingess v. Drake*, 135 W.Va. 502, 64 S.E.2d 601 (1953); *Stephenson v. Kuntz*, 131 W.Va. 599, 49 S.E.2d 235 (1948); *Kidwell v. Rogers*, 103 W.Va. 272, 137 S.E. 5 (1927); *McKown v. McKown*, 93 W.Va. 689, 117 S.E. 557 (1923). *See also* W. Va. *Code* § 36-1-13 (1966).

The estate given the appellee under the will is similar to a fee simple determinable in that it is an estate which may last forever should she have a child born of her body, yet should she fail to produce a child, the estate terminates, and the limitation over in favor of the appellants takes effect. However, the situation here is unlike that in previous cases before this Court where fee simple determinables have been found to exist, in that the period of limitation is not definitely fixed at the death of the appellee, and the language employed by the testator is not that normally used to indicate a fee simple determinable. *See Bennett v. Charles Corp.*, 159 W.Va. 705, 226 S.E.2d 559 (1976).

Rather the language employed by the testator, *i.e.* "upon condition that," is generally used to indicate a fee simple subject to condition subsequent. *Bennett v. Charles Corp., supra.* The primary distinction between the fee simple determinable and the fee simple subject to condition subsequent, is that the former estate terminates upon the ocurrence of the event upon which it is limited without entry, whereas the latter estate does not terminate until the entry of the party entitled to take upon the happening of the condition. *Woman's Club of Saint Albans, supra; Dingess v. Drake, supra.* The testator herein, however, makes no provision for a right of reentry, and the absence of such a provision is a factor which has been held to require a finding that no condition subsequent is created. *See* 1 L. Simes and A. Smith, *The Law of Future Interests* § 248 (1956), and cases cited therein.

A factor which must be considered in determining the nature of the estate devised to the appellee under the will is that portion of the will granting the appellee the privilege of selling timber off the land. The very existence of this clause belies a finding that the testator intended to devise either a fee simple determinable or a fee simple subject to condition subsequent, for the owner of either of these estates has all the rights with respect to the estate which he would have if a fee simple were given, *see Talbot v. City of Norfolk, supra*; 1 H. Tiffany, *The Law of Real Property* § 187 (3d ed. 1939), and the grant of the privilege would be unnecessary. *See, Stephenson v. Kuntz, supra*; *see also*, RESTATEMENT OF PROPERTY § 49, Comment a, Illustration 2 (1936).

Another possibility is that the testator intended to subject the appellee's estate to a condition precedent. In the case of a condition precedent there is actually no estate so long as the condition has not been fulfilled, but merely the prospect or possibility of an estate. 1 H. Tiffany, *The Law of Real Property, supra* at § 186. In the event of a finding of a condition precedent, the estate given the appellee would not vest until such time as she had a child born of her body, and she would currently have no vested interest in the property. However, courts generally favor the early vesting of estates, *see, e.g., Wheeling Dollar Savings & Trust Co. v. Singer*, 162 W.Va. 502, 250 S.E.2d 369 (1978), and thus will find a condition to be precedent only when the will clearly manifests such an intent on the part of the testator. *Suter v. Suter*, 68 W.Va. 690, 70 S.E. 705 (1911). Such an intent is not indicated by the will here in question, for the testator in this case clearly intended that the appellee have some limited possessory interest in the property during her lifetime, regardless of whether the condition be fulfilled.

The interest devised the appellee does not fit neatly into any one of the pertinent categories of real property interests that have developed through the common law. However, that fact is not a sufficient reason for frustrating the intent of the testator. "The intention of the testator must be given effect in the construction of his

will, unless the intention violates some positive rule of law." Syllabus Point 1, *Guthrie v. First Huntington Nat'l Bank*, 155 W.Va. 496, 184 S.E.2d 628 (1971); Syllabus Point 2, *Mauzy v. Nelson*, 147 W.Va. 764, 131 S.E.2d 389 (1963). It is clear from the provision of the will that the testator intended that the appellee have some future interest in the real property devised, which would vest upon the condition that a child be born of her body. It is also evident from the terms of the will that the testator further intended that the appellee should have some limited type of possessory interest in the property during her lifetime even if the condition were to go unfulfilled.

This Court recognizes that the common-law classifications of estates cannot include all possible future interests, and when an estate does not fit the mold of any one category, it should not be discarded, if to give it effect would not violate some positive rule of law. We are guided in reaching this conclusion by Professors Simes and Smith, who state in their widely respected treatise:

> In spite of the fact that the law of future interests first developed as a law of fixed types of interests, the tendency has been constantly away from that conception of future legal relations in property. While these types still have much significance, there are many interests which do not strictly conform to the mold of any of them. Doubtless no classification could be suggested which would include all possible future interests. Hence limitations should not be discarded merely beause they do not conform to any of the fixed types. 1 L. Simes and A. Smith, *The Law of Future Interests, supra* at § 311.

In accordance with these principles we will attempt to give substance to the intent of the testator as revealed by the will. It is apparent from the language employed by the testator that should the appellee have a child born of her body her estate would then vest in fee simple. It is likewise apparent that should this condition fail to occur the interest devised will go to the appellant Betty Lou Propst, if she is then living, or if not to the testator's other legal heirs. There is no question that this devise does not

violate the rule against perpetuities, since the latest the estate can vest in fee simple is at the death of the appellee, she being considered at law capable of bearing issue throughout her life. *Carney v. Cain,* 40 W.Va. 758, 23 S.E. 650 (1895); *see also Berry v. Union Natl' Bank, supra.*

The provision in the will permitting the appellee to sell timber off the property during her lifetime regardless of whether a child is born to her, appears to contemplate a possessory interest on the part of the appellee in the nature of a life estate. Under this provision it is contemplated that the appellee may join in the use and enjoyment of the property during her lifetime, but may not commit waste except to the extent that she is given the privilege of joining in the sale of timber.

We find it unnecessary to attach an appellation to the estate devised the appellee by the testator. Our purposes will be served simply by describing its characteristics. By the terms of the will the appellee was vested with a possessory undivided one-half interest in the property upon the death of the testator. This interest was intended by the testator to be in the nature of a life estate, entitling the appellee to join in the use and enjoyment of the property during her lifetime, and to participate in the sale of timber off the land. Upon the birth of a child to the appellee her interest will be enlarged to a fee simple estate in an undivided one-half portion of the realty. Upon the death of the appellee without a child being born to her body, a fee simple estate will vest in the appellant Betty Lou Propst if she is then living. If Betty Lou Propst does not survive the appellee, the undivided one-half interest will vest in fee simple in the testator's "next legal heirs." This case should not be construed as excluding the appellee's adoptive son, Douglas Reedy, from this class of heirs of Harvey A. Propst. Under the terms of W. Va. Code 48-4-5 a legally adopted child shall inherit from and through his adoptive parent, and from or through the lineal or collateral kindred of the adoptive parent. Thus, by the operation of law, Douglas Reedy is a prospective member of this as yet undefined class of heirs of Harvey A. Propst, and in the proper circumstances, would be

entitled to take under this provision of the will, *See Wheeling Dollar Savings & Trust Co. v. Hanes, supra.*

For the foregoing reasons the decision of the Circuit Court of Pendleton County is reversed and the case is remanded for proceedings consistent with this opinion.

*Reversed and remanded.*