# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**June 5, 2024**

ASHLEY N. DEEM, DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**JEREMY STARKS,**
**Defendant Below, Petitioner**

**v.)  No. 23-ICA-128**          (Cir. Ct. of Putnam Cnty. No. CC-40-2022-P-76)

**PUTNAM COUNTY COMMISSION,**
**Plaintiff Below, Respondent**


## MEMORANDUM DECISION

Petitioner Jeremy Starks appeals an order of the Circuit Court of Putnam County, dated February 27, 2023, granting a permanent injunction in favor of Respondent Putnam County Commission (the "Commission").[1]  The Commission filed a response in support of the circuit court's order.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The issue on appeal is the ownership of a possibility of reverter interest in a 100-acre surface parcel Diamond Alkali Company ("Diamond")[2] gifted to the Commission by deed dated February 10, 1967.  The Commission argues that Diamond currently owns the reverter interest, while Mr. Starks argues that Diamond conveyed the reverter interest to his predecessors in title to an adjacent parcel of land he purchased on May 20, 2022.

On August 26, 1947, the United States government conveyed a 1,426-acre parcel of land situate in the Union and Buffalo Districts of Putnam County, West Virginia to Diamond (the "Original Tract").  The deed was recorded in the Office of the Clerk of

---

[1] Mr. Starks is represented by O. Gay Elmore, Jr., Esq.  The Commission is represented by Eric S. Embree, Esq.

[2] Subsequent to the February 10, 1967, conveyance, Diamond Alkali Company merged with Shamrock Oil and Gas Corporation to create Diamond Shamrock Corporation. For purposes of this decision, "Diamond" refers to both Diamond Alkali Company and its successor entity, Diamond Shamrock Corporation.

Putnam County, West Virginia. Twenty years later, on February 10, 1967, Diamond conveyed as a gift a 100-acre surface tract from within the Original Tract to the Commission (the "Commission Tract") together with an easement for ingress and egress. The deed contained the following clause creating (or reserving) a reverter interest in Diamond:

> It is expressly understood and agreed by the parties hereto that the land hereby conveyed is to be held and used by the [Commission] for public recreation and other public purposes, and if the [Commission] attempts to dispose of all or any part of said land, or to use all or any part thereof for other than a public purpose, then, upon the happening of either or any such event or events, title to the land hereby conveyed shall [revert] to [Diamond], its successors and assigns, who shall have the right forthwith to re-enter and take possession of said land without process of law.

This deed (the "Commission Deed") was duly recorded in the Office of the Clerk of Putnam County, West Virginia. Thereafter, on June 12, 1968, Diamond conveyed a separate 200-acres of the Original Tract to the Town of Eleanor, West Virginia,[3] by a deed recorded in the Office of the Clerk of Putnam County, West Virginia.

On April 22, 1977, Diamond conveyed the remainder of the Original Tract via special warranty deed to Michael E. Corey and Jeanette L. Corey, as joint tenants with rights of survivorship (the "Corey Deed"). In the Corey Deed, Diamond conveyed "all that certain tract or parcel of land, together with any improvements thereon and the appurtenances thereto belonging…." The Corey Deed was duly recorded. The Corey Deed expressly contained two exceptions reflecting the prior conveyances to the Commission and the Town of Eleanor:

> There is excepted from this conveyance 300 acres, more or less, of surface within the foregoing boundaries which have heretofore been conveyed in two tracts as follows:
>
> 1. Tract of 100 acres, more or less, from [Diamond] to the [Commission] by deed dated February 10, 1967 and recorded in the office of the aforesaid Clerk in Deed Book 164, page 397.
>
> 2. Tract of 200 acres, more or less, from [Diamond] to the Town of Eleanor, by deed dated June 12, 1968 and recorded in the office of the aforesaid Clerk in Deed Book 170, page 13.

---

[3] The 200-acre conveyance to the Town of Eleanor is not at issue in this case.

The Corey Deed conveyance was also expressly "subject to all existing leases of record and to any easements or rights-of-way of record or visible on the ground, made by [Diamond] or its predecessors in title." The Corey Deed further described a 40-foot easement granted to the Commission in the Commission Deed; an oil and gas lease from Diamond to Clarence W. Meadows signed on November 15, 1950; and two gas wells and connecting lines conveyed to Union Oil and Gas Company by the United States government. The Corey Deed further makes an express conveyance of all of Diamond's "right, title and interest…as lessor in the … oil and gas lease of November 15, 1950" to Clarence W. Meadows. The 1977 Corey Deed makes no mention of Diamond's reverter created in the 1967 Commission Deed.

According to the record, Michael E. Corey died on July 16, 1994. By deed dated May 18, 2016, Jeanette L. Corey conveyed in fee simple all of her right, title, and interest in the Original Tract to Anthony A. Saylor and Cheryl F. Saylor as joint tenants with rights of survivorship. The May 18, 2016, deed contained the same exception for the 100-acres conveyed to the Commission as described in the Corey Deed, and the deed was recorded in the Putnam County Clerk's Office. Thereafter, by deed dated November 25, 2020, Anthony A. Saylor and Cheryl F. Saylor conveyed all their "Estate, Right, Title and Interest" in the Original Tract to WVA Land LLC. This deed was recorded in the Putnam County Clerk's Office. The November 25, 2020, deed contains the same exception for the 100-acres conveyed to the Commission and the 200 acres conveyed to the Town of Eleanor.

Finally, by deed dated May 20, 2022, WVA Land LLC conveyed the Original Tract to Mr. Starks (Petitioner herein). Like the prior deeds, the deed to Mr. Starks contained the same exception to the 100-acres conveyed to the Commission on February 10, 1967. However, the deed from WVA Land LLC to Mr. Starks included additional language not contained in previous deeds in the chain of title. This additional language expressly addresses Diamond's reverter:

> This conveyance is made subject to that certain right of reversion contained within Deed dated February 10, 1967, by and between [Diamond], a corporation and the County Court of Putnam County, West Virginia, of record in the Office of the Clerk of the County Commission of Putnam County, West Virginia in Deed Book 164, at page 397.

According to Mr. Starks, at some point, the Commission leased the Commission Tract to Putnam County Park Gun Club. Inc., a private corporation. Thereafter, by letter dated June 3, 2022, Mr. Starks notified the Commission, Putnam County Park Gun Club, and the Town of Eleanor that because the Commission Tract was no longer being used for public purposes, he was exercising an "Automatic Reversionary Interest" contained in the Commission Tract deed, and that he was terminating Putnam County Park Gun Club's lease, effective June 10, 2022.

3

On June 8, 2022, the Commission filed a Petition for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction requesting the circuit court to restrain Mr. Starks from interfering or attempting to deprive the Commission from the use and enjoyment of the Commission Tract. The parties stipulated to a preliminary injunction, and on February 27, 2023, the circuit court of Putnam County entered an Order Granting Permanent Injunction.

According to the circuit court's order, Diamond created and held an automatic reverter interest in the Commission Tract that was not conveyed to Mr. Starks' predecessors in title (beginning with the Corey Deed). The circuit court noted that the Corey Deed contained an unambiguous exception for the Commission Tract, and that Diamond "did not convey its interest in the possibility of reverter clause to the subject 100-acre tract owned by the [Commission] to Mr. and Mrs. Corey." As a result, the circuit court determined Mr. Starks lacked standing to deprive the Commission (and Putnam County Park Gun Club) from the use and enjoyment of the Commission Tract, and the circuit court granted the Commission's request for a Permanent Injunction. It is from the circuit court's February 27, 2023, Order Granting Permanent Injunction that Mr. Starks appeals to the Intermediate Court of Appeals.

The following standard of review applies to our review of circuit court's grant of a permanent injunction:

> "Unless an absolute right to injunctive relief is conferred by statute, the power to grant or refuse or to modify, continue, or dissolve a temporary [preliminary] or a permanent injunction, whether preventive or mandatory in character, ordinarily rests in the sound discretion of the trial court, according to the facts and the circumstances of the particular case; and its action in the exercise of its discretion will not be disturbed on appeal in the absence of a clear showing of an abuse of such discretion." Syl. Pt. 1, *Baisden v. W. Va. Secondary Schools Activities Comm'n.*, 211 W. Va. 725, 568 S.E.2d 32 (2002) (internal citation omitted). "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*" Syl. Pt. 4, *Burgess v. Porterfield*, 196 W. Va. 178, 469 S.E.2d 114 (1996).

On appeal, Mr. Starks argues that the circuit court erred when it relied on the excepting language in the Corey Deed and held that the Corey Deed "did not grant, but rather reserved, a reversionary interest in [Diamond]." In other words, Mr. Starks argues

4

that when Diamond conveyed the Original Tract to the Coreys on April 22, 1977, Diamond also conveyed to the Coreys its reverter interest in the Commission Tract.

The circuit court found that Diamond created a "determinable fee" or a "fee simple determinable" when it transferred by gift the Commission Tract in 1967. "A fee simple determinable is created by any limitation which creates an estate in fee simple and provides that the estate shall automatically expire upon the occurrence of the stated event." *Woman's Club of St. Albans v. James*, 158 W. Va. 698, 703, 213 S.E.2d 469, 473 (1975) (citing 28 Am. Jur. 2d, *Estates*, § 24). "The estate is one which may last forever, but whose duration is circumscribed by a condition which may never happen, but if it does happen, the estate is immediately at an end." *Reedy v. Propst*, 169 W. Va. 473, 479, 288 S.E.2d 526, 530 (1982) (citing *Talbot v. City of Norfolk*, 148 S.E. 865) (Va. 1929)). "The language of termination necessary to create a fee simple determinable need not conform to any set formula, as long as any words expressive of the grantor's intent that the estate will terminate on the occurrence of the event or that, on the cessation of a specified use, the estate will end." 28 Am. Jur. 2d *Estates* § 33, Westlaw (database updated February 2024) (footnote omitted).[4]

The dispositive question before this Court is whether Diamond conveyed its possibility of reverter interest by the Corey Deed. West Virginia Code § 36-1-9 (1923) states that "[a]ny interest in or claim to real estate or personal property may be lawfully conveyed or devised. Any estate in such property may be made to commence in futuro, by conveyance inter vivos, in like manner as by will, and any estate which would be good as an executory devise or bequest, shall be good if created by conveyance inter vivos." While possibility of a reverter interest may be transferred, we find the circuit court correctly determined that Diamond did not convey the possibility of reverter interest in the Commission Tract by delivering the Corey Deed.

---

[4] The reverter clause in the Commission Deed contains both automatic reverter language (normally seen in determinable fees) and a right of reentry provision (usually seen in a fee simple subject to a condition subsequent). A fee simple subject to a condition subsequent "does not terminate automatically upon the occurrence of the stated event, but is subject to defeasance only by the exercise of a right of reentry or power of termination by the grantor or his heirs." *Woman's Club of St. Albans v. James*, 158 W. Va. at 703, 213 S.E.2d at 473 (1975) (citing 28 Am. Jur. 2d, *Estates*, §§ 188, 144). To this Court, the Commission Deed could also be construed as granting to the Commission a fee simple subject to a condition subsequent. However, the answer to the question of whether the Commission Deed creates a determinable fee or a fee simple subject to a condition subsequent is not essential to the outcome of this case.

Generally, unless language of reservation appears in the deed, a conveyance of real property will transfer the grantor's entire interest in the property conveyed:

> When any real property is conveyed or devised to any person, and no words of limitation are used in the conveyance or devise, such conveyance or devise shall be construed to pass the fee simple, or the whole estate or interest, legal or equitable, which the testator or grantor had power to dispose of, in such real property, unless a contrary intention shall appear in the conveyance or will.

W. Va. Code § 36-1-11 (1923). The Supreme Court of Appeals has "recognized that under [W. Va. Code § 36-1-11] a deed conveying land, in the absence of an exception to the contrary, passes the entire interest [of] the grantor." *G&W Auto Center, Inc. v. Yoursco*, 167 W. Va. 648, 650, 280 S.E.2d 327, 329 (1981) (citing Syl. Pt. 1, *Freundenberger Oil Co. v. Gardner*, 79 W. Va. 46, 90 S.E. 815 (1916)). "Our general rule of construction is that where it appears from the language of the deed that there is doubt as to whether the grantor intended to [except] or reserve to himself an interest in the land conveyed, the question of interpretation will be solved in favor of the grantee." *G&W Auto Center, Inc. v. Yoursco*, 167 W. Va. at 651, 280 S.E.2d at 329.

The circuit court observed that the Corey Deed contained words of limitation on the conveyance in the form of an exception. As is stated above, the Corey Deed excepted the 100-acre Commission Tract previously granted as a gift to the Commission from the conveyance to the Coreys, specifically referencing the deed book and page number of the Commission Deed. "An exception withdraws from the operation of the conveyance some part of the thing granted, which, but for the exception, would have passed to the grantee under the general description. . . ." *Klein v. McCullough*, 245 W. Va. 284, 289, 858 S.E.2d 909, 914 (2021) (citations omitted). "The form of an exception is immaterial. It may be effected by the use of any words expressing intention to except." *White Flame Coal Co. v. Burgess*, 86 W. Va. 16, ___, 102 S.E. 690, 692 (1920) (quoting Syl. Pt. 7, *Freudenberger Oil Co. v. Simmons*, 75 W. Va. 337, 83 S.E. 995 (1914)). However, "[i]n order to create an exception or reservation in a deed which would reduce a grant in a conveyance clause which is clear, correct and conventional, such exception or reservation must be expressed in certain and definite language." Syl. Pt. 2, *Hall v. Hartley*, 146 W. Va. 328, 119 S.E.2d 759 (1961).

Mr. Starks, relying on *Paxton v. Benedum-Trees Oil Co.*, 80 W. Va. 187, 94 S.E. 472 (1917), argues that the language in the Corey Deed is legally sufficient to convey Diamond's reverter in the Commission Tract. Mr. Starks emphasizes that while the Corey Deed does not mention the reverter, the Corey Deed used the word "all" when describing the parcel conveyed. According to Mr. Starks, Diamond granted all of its interest to the Coreys, including its reverter interest, and that for Diamond to have retained (or failed to

6

convey) that interest, it should have specifically referenced the reverter in the Corey Deed conveyance. We disagree.

First, Mr. Starks' reliance on *Paxton* is misplaced. *Paxton* is a case addressing ambiguity within a deed. Here, the circuit court correctly determined that the Corey Deed conveyance contained an unambiguous exception of the Commission Deed conveyance. Second, while it is true that the Corey Deed does not mention Diamond's reverter interest, the Corey Deed expressly excepts from conveyance the 100-acre Commission Tract and specifically references the deed book and page number of the Commission Deed, which creates Diamond's reverter interest as part of the gift to the Commission. Third, the Corey Deed does not convey all of Diamond's rights, title, and interest in the Commission Tract. It only conveyed via special warranty deed the Original Tract land, improvements, and appurtenances, none of which comprehends the reverter interest. Finally, as evidence of Diamond's intent when it conveyed the Corey Deed, Diamond added to the deed all its rights, title, and interests in certain gas leases from November 15, 1950. Had Diamond wished to also convey its possibility of reverter interest in the Commission Tract, it could have added a similar provision addressing that interest.

While the parties and this Court found no West Virginia authority directly on point, the relevant facts in this case are similar to those in *Smith v. Sch. Dist. No. 6 of Jefferson County*, 250 S.W.2d 795 (Mo. 1952). In *School Dist. No. 6*, a property owner (Mr. Frissell) conveyed part of a 290-acre parcel to a local school district. Mr. Frissell retained a possibility of reverter interest that became operable if the land conveyed ceased to be used for school and public purposes. Mr. Frissell later conveyed the remainder of the entire 290-acre parcel to Mr. Smith's predecessor in title. Mr. Frissell, like Diamond in this case, reserved and excepted the acreage that he conveyed to the school district from the Smith acreage. Later, when the school district stopped using the parcel for school and public use, Mr. Smith claimed that Mr. Frissell conveyed his reverter interest too when the remainder of the 290-acre parcel was conveyed to Mr. Smith's predecessor in title. The Missouri Supreme Court disagreed with Mr. Smith. It stated that Mr. Frissell's deed conveying the remainder of the 290 acres showed no intent to convey a reverter interest:

> We find, in his deed to [Mr. Smith's predecessor in title], no intention on Frissell's part to convey his possibility of reverter in the schoolhouse tract. In the description of the land conveyed by his warranty deed, Frissell expressly 'excepted' or *excluded* the tract; and he did not expressly *convey* to [Smith's predecessor in title] *any interest* in the *land* thus *excluded*. There are no inconsistencies in the language . . . It is clear and unambiguous. The language negatives any intention by Frissell to convey to [Smith's predecessor in title] *any* interest in the tract which he (Frissell) had previously conveyed in fee simple determinable to the school district.

*Smith v. School Dist. No. 6 of Jefferson County,* 250 S.W.2d at 797 (emphasis in original). Similarly, in this case Diamond did not expressly convey its reverter interest in the Corey Deed.

The circuit court found no intention on Diamond's part to convey the reverter interest in the Commission Tract when Diamond delivered the Corey Deed. We concur and find that the circuit court did not abuse its discretion and did not commit error of law when it granted the Commission's request for a permanent injunction because Mr. Starks lacked standing to invoke the Commission Deed reverter clause. Finding no error in the circuit court's February 27, 2023, order, we hereby affirm.

Affirmed.

**ISSUED:** June 5, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear